[No. 6,604—In Bank.]
May 26, 1882.

## GEORGE McDONALD v. SUSAN M. McELROY ET AL.

RIGHT OF WAY—LIABILITY OF HEIR ON COVENANT OF ANCESTOR—WARRANTY—QUIET ENJOYMENT—SEISIN—DEED.—The facts alleged in the complaint were in substance as follows: M. by deed of date October 27, 1877, for a valuable consideration conveyed to plaintiff a lot of land in San Francisco " particularly described as follows; Commencing on the south-

easterly line of Minna street at a point distant one hundred and sixty feet eight inches northeasterly from the northeasterly line of Tenth street; thence running northeasterly along said line of Minna street twenty-two feet eight inches; thence at right angles southeasterly eighty feet; thence at right angles southwesterly twenty-two feet eight inches; and thence at rfght angles northwesterly eighty feet to said southeasterly line of Minna street at the point of commencement; *together with the right of way in, upon and over a street thirty-five feet in width called Minna street, running from Tenth street to the southwesterly line of the lot of land thereby conveyed (to wit, said last described parcel of land) ; said street forever to be and remain free and open as a public street."* At the date of the deed, M. was the owner of an undivided sixth part of a tract of land including the strip of land referred to as Minna street from Tenth street to within a short distance of the land conveyed, and was the owner in severalty of a tract of land which included the balance of the strip up to the land conveyed— said strip of land being in fact not a street but private property. After the death of M. by a decree in an action of partition to which the plaintiff was not a party, a portion of the land thus held in common, including a portion of the so called Minna street, was allotted to the defendants herein (who are the widow and children and heirs of M.) and the balance of the said land including the greater part of the so called Minna street was allotted to other parties ; and thereby the ingress and egress of the plaintiff over the said Minna street to Tenth street became for the greater part of the way impracticable except with the consent of the owners. Afterwards by a decree of distribution in the Probate Court the tract of land allotted to the defendants herein in the partition suit, and also the tract owned by M. in severalty extending from the land conveyed northerly to Mission street were distributed to the defendants. The plaintiff requested the defendants to open Minna street as in said deed described or otherwise to afford plaintiff means of ingress and egress to and from his said land, and they refused to do so. The prayer of the complaint was for specific performance and for general relief. Judgment went for the defendants on demurrer to the complaint.

*Held:* The words "street forever to be and remain free and open as a public street"—if they constitute any covenant, are either a covenant of seisin or a covenant of warranty, or for quiet enjoyment. If construed as a covenant of seisin, there was a breach as soon as the covenant was executed, and the plaintiff claim for the breach should have been presented to the administratrix of the estate of M.; if a covenant of warranty or for quiet enjoyment, the heirs are not bound, as they are not named in the covenant, and the breach occurred after the death of the covenantor.

Id.—Id.—Id.—Id.—Id.—Id.—At common law, to make the heir responsible, it was essential that he be expressly named in the bond or covenant of his ancestor; and in this State there was no statute which made the lands descended to the heir liable for the covenants of the ancestors, except the statute which applied all assets to the payment of decedent's debts— through the machinery of the Probate Court.

Id.—Right of Way of Necessity.—*Held,* further that plaintiff is not entitled to a right of way of necessity over defendant's lands.

Id.—Id.—Case Distinguished.—*Taylor* v. *Warnaky,* 55 Cal. 350, has no application to this case.

APPEAL from a judgment for defendants in the Nineteenth District Court, City and County of San Francisco. WHEELER, J:

Besides the allegations referred to in the opinion, the complaint alleged that, at the time of the conveyance to the plaintiff and from thence up to the time of his death, McElroy owned in severalty a tract of land lying between the parcels sold and conveyed to the plaintiff and the larger tract fronting on Mission and Tenth streets in which he had an undivided interest, which parcel so owned in severalty extended northerly from the land conveyed to Mission street; and that this land was distributed to the defendants by the Probate Court.

The Court in granting the petition for hearing in bank made the following order:

"Ordered that petition for hearing in bank be granted.

"The attention of the counsel is called to the questions:

"1. Is plaintiff (under his allegations) entitled to a way of necessity?

"2. Is the language of the deed set forth in the complaint (relating to Minna street) a covenant?

"3. If so, is it a covenant running with the land, and so binding upon the heirs although they are not named in it?"

*McAllister & Bergin*, for Appellant.

That the provision in the deed constitutes a covenant, see: *Aikin* v. *Albany & Vt. R. R.*, 26 Barb. 292; *Van Rensselaer* v. *Smith*, 27 id. 146: *Masury* v. *Southworth*, 9 Ohio St. 353.

The provision in the deed with respect to Minna street constituted a covenant for that street. (*Bartlett* v. *Bangor*, 67 Me. 460; *Thomas* v. *Poole*, 7 Gray, 84; *Zearing* v. *Raber*, 74 Ill. 409; *Brown* v. *Manning*, 6 Ohio, 298; S. C., 27 Am. Dec. 253; *Stone* v. *Brooks*, 35 Cal. 499; *Brew* v. *Van Deman*, 6 Heisk, 434; *Trustees of Watertown* v. *Cowen*, 4 Paige, 510; S. C., 27 Am. Dec. 80; *Barrows* v. *Richard*, 8 Id. 351; *Tallmadge* v. *East River Bank*, 26 N. Y. 109; *Trustees* v. *Lynch*, 70 Id. 447; *Atlantic Dock Co.* v. *Leavitt*, 54 Id. 38.) As to what covenants run with the land: *Masury* v. *Southworth*, 9 Ohio St. 349; *Hunt* v. *Danforth*, 2 Curtis C. C. 592.

The heirs of McElroy are liable upon the covenants of the

deed to the extent of the assets descended to them. (*Metcalf v. Smith,* 40 Mo. 576; *Watkins* v. *Holman,* 16 Pet. 62, 63; *Piatt* v. *St. Clair's Heirs,* 6 Ohio, 242; 4 Kent, 240 (marg.); *Williams* v. *Gibbes,* 17 How. (U. S.) 257; *In the Matter of Howard,* 9 Wall. 186.) The death of McElroy did not destroy the obligation of the covenant or create a breach thereof. Until there was a disturbance in enjoyment of the street there was no right of action, no claim could be presented against his estate therefor. The eviction occurred only a few months before the commencement of this action. (*McGary* v. *Hastings,* 39 Cal. 360.)

Limitation commences not from the making, but from the breach of a contract. (*Baker* v. *Joseph,* 16 Cal. 177.) In this case, if upon no other principle, we respectfully submit that the plaintiffs are entitled to have this Court adjudge and declare, that they are entitled to a right of way of necessity. (*Taylor* v. *Warnaky,* 55 Cal. 350.)

*M. B. Blake* and *Cope & Boyd,* for Respondent.

The so called covenant sued upon is not a covenant for or in reference to title, nor enforceable as such. It is not one of technical, "usual," or "full" covenants for title. (Rawle on Covenants for Title, (4th ed.), pp. 16, 23, 25, 27.) The grant is of certain land and of an easement of way. The words "to be and remain free and open as a public street," are words of qualification only. They are incorporated into the substance of the grant of the easement, and descriptive of its nature as a public instead of a private way; that is to say, one in which the grantee acquired and the grantor retained only rights consistent with its common use by the general public. By a grant of a private way, the grantee would have been enabled to prevent or control any dedication to public uses, and the object here is to guard against any such result. (*Regina* v. *Chorley,* 12 Q. B. 519; and see *Hall* v. *McLeod,* 2 Metc. (Ky.) 104, 105; Washburn on Easements, (3d ed.), 182, 216; Woolrych on Ways, p. 9, (* 11.).

The words are somewhat of the nature of a *habendum,* whose office is to show the extent and quality of the grant. If they were intended as a covenant, it is reasonable to suppose that they would have been separately expressed in the

usual place for covenants. The words are: be and remain, not become; words of present dedication, not of promise. The intention to make an agreement must be clearly manifested, otherwise covenants ought not to be implied. "In conveyances of real estate there must always be danger of implying anything that is not stipulated in clear and precise terms. This is the safest way of determining the extent of a grantor's responsibility." (*Lessee of Ewalt* v. *Gratz*, 2 Binn. 102 ; *Whitehill* v. *Gotwalt*, 3 Penn. 324, 325, 327 ; see Bingham on Real Estate, p. 430.)

If any covenant arises from the clauses of the deed relating to the street, it is governed and controlled by the operative words of the deed ("grant, bargain, sell," etc.), and is restricted to acts of the grantor. There is no general warranty of title or of quiet enjoyment, if A. grants, bargains, etc., to B. certain premises to have and hold in fee forever; nor is it otherwise if the grant is only of a right of way. No different rule should prevail if the grant be of a right of way over certain premises, "the same to be and remain a public street" (instead of a private way).

If a general warranty were implied in the words of grant, restraining words would be necessary in order to limit it; as only a limited warranty is so implied, enlarging words are equally requisite to extend the liability.

This is not a case of independent covenants. The clause is inwrought into the very substance of the grant, and makes up part of the description. As bearing on this point, see *Sweet* v. *Brown*, 12 Metc. (Mass.) 175, 176 ; *Allen* v. *Holton*, 20 Pick. 463 ; *Freeman* v. *Foster*, 55 Maine, 510 ; *Gale* v. *Reed*, 8 East. 80 (new ed., vol. 4, p. 334); *Browning* v. *Wright*, 2 Bos. & P. 13 ; *Clanrickard* v. *Sidney*, Hobart, [273], [275] ; *Nind* v. *Marshall*, 1 Brod. & Bing. 319; S. C., 3 Moore, 702; Cf. *Bricker* v. *Bricker*, 11 Ohio St. 240; Rawle on Cov. for Title (4th ed.), 458–460, and notes; 486, and note 1; Platt on Cov. 58.

The complaint itself shows that the grant of the right of way was ineffectual in the nature of the case, and never has, nor could have, become operative; but it does not show that the same has been defeated or impaired by any act of the grantor or of the respondents, his successors in interest.

The grantor being only a tenant in common, having a small undivided interest in most of the premises over which the proposed street was to extend, his grant of the easement conferred no right as against his co-tenants. (Freeman on Cotenancy and Partition, § 185; Washburn on Easements, 37 (*29); *Ward* v. *Dewey,* 16 N. Y. 519.)

The allegation of the complaint that there is not, and never has been, any street or way at all over the land described as such in the deed is fatal to the appellant:

1. The lot conveyed can only be located by reference to Minna street, and if there be no such street the description in the deed is void for uncertainty.

2. As the appellant himself admits that there is no street, he can not invoke the doctrine of estoppel against the grantor or his privies. The remedy by injunction, which is the one usually sought in such cases (and is the only one which might have any plausible ground for its support), is therefore inapplicable under the present complaint.

3. By appellant's own showing the alleged covenant does not run with the land; because, as there never was any street, the covenant was broken as soon as made. (*Lawrence* v. *Montgomery,* 37 Cal. 183, 188; 4 Kent's Com. *473; Rawle on Cov. of Title, 4th ed., 313, 318 n.)

The complaint shows that specific performance of the alleged covenant is impossible, and can not be compelled by the Court.

The complaint shows that appellant has no remedy in damages.

1. Such remedy could only be under the theory of a general warranty of title by respondents' ancestor (the grantor in the deed). If there be any warranty here, it is limited; but, aside from that, lineal and collateral warranties, with all their incidents, are abolished in this State. The covenants of warranty are now merely personal covenants, affecting only the covenantor and assets in the hands of his representatives. (Stats. of 1855, p. 171, Act of April 27, 1855, § 8; C. C., § 1115; 4 Kent's Com. *471; *Pollock* v. *Speidel,* 17 Ohio St. 439, 449; *Bricker* v. *Bricker,* 11 id. 245.)

2. Appellant can not bring himself within the saving clause on which he relies in the statute of 1855 (substan-

tially re-enacted in the Civil Code), viz: that "the heirs and devisees of, every person who shall have made any covenant or agreement in: reference to the title of, in, or to, any real estate, shall be answerable upon such covenant or agreement to the extent of the land descended or devised to them, in the cases and in the manner prescribed by law."

The clause in controversy here is not a "covenant or agreement in reference to title" at all, and certainly not within the contemplation of this statute, which, by any reasonable construction, must be held to refer only to express covenants, and such as were generally known as covenants for title.

Under our statutes, all liability of heirs for the obligations of their ancestor is terminated by close of the administration on his estate. The appellant's allegations in this regard are therefore fatal to his case. Again, heirs and devisees are only answerable "in the cases and in the manner prescribed by law." It is, we take it, reasonably clear, and in conformity with the received use of language, that by the "law" here referred to, the statutory, and not the common law, is intended. Only through positive enactments by the Legislature are the cases in which liability exists, and the manner of its enforcement to be prescribed.

Even at common law the complaint shows no right of recovery on the part of appellant. At common law, in order that an heir should be liable upon the obligations of his ancestor, it was requisite that he should be expressly named, and of this there is here no averment. (Rawle on Cov. for for Title, (4th ed.) 461, 541, 554, 561; Platt on Cov. 61–63, 448, 449; 2 Wait's Actions and Defenses, 397.)

The complaint does not entitle plaintiff to the laying out of a "way of necessity," which would be the only other relief possible under any circumstances. The complaint counts distinctly on the supposed covenant for the special way over Minna street, and is substantially only a bill for specific performance of that covenant, or for the alternative of damages. It is not framed with reference to the laying out of any other way, and contains nothing upon which the Court could act with any certainty for that purpose, or upon which any issue could be raised by answer. (*Kuhlman* v. *Hecht*, 77 Ill. 570; *Nichols* v. *Luce*, 24 Pick. 102, 104; S. C., 35 Am. Dec. 302.)

Appellant did not purchase with any right to a way by necessity. What is called necessity, is only a circumstance resorted to in order to show and explain the intention of the parties, in raising an implication of a grant (Washburn on Easements, 41 ([*33]); and there is no room for implication where the parties have made other and express provision for a way.

Appellant alleges, that he wholly relied on the street and right of way specially conveyed, and if title to such street and right of way has failed, his remedy is the same and no greater than if it had failed as to the main lot conveyed.

Evidently, if the grant had been of a lot of land fronting on a street, but otherwise surrounded by land of the grantor, and title to the frontage had proved worthless, the grantee, though so far evicted as to be entirely shut off from any street, could not thereupon set up a claim to a way by necessity through the land of his grantor; and the principle is the same in the grant under discussion. In all these cases the rule is *caveat emptor*.

The COURT:

We are satisfied with the views expressed when the case was considered by Department One, and adopt the opinion delivered by the Department as the opinion of the Court in Bank. The case of *Taylor* v. *Warnaky*, 55 Cal. 350, cited by appellant, does not apply. James McElroy was only the owner of an undivided sixth of the land over which the right of way is claimed, at the time of his conveyance to the plaintiff, nor did the entire estate ever vest in him or his heirs.

Judgment affirmed.

The following is the decision of Department One referred to:

McKINSTRY, J.:

The complaint alleges that, on the twenty-seventh day of October, 1867, James McElroy, since deceased, in consideration of the sum of seven hundred dollars, paid to him by plaintiff, did, by his deed of that date, grant, bargain, sell, alien, remise, release, convey and confirm unto plaintiff, his heirs, executors, administrators—all that certain parcel of

land situate in the City and County of San Francisco, particularly described as follows: "Commencing on the southeasterly line of Minna street at a point distant one hundred and sixty feet eight inches northeasterly from the northeasterly line of Tenth street; thence running northeasterly along said line of Minna street twenty-two feet eight inches; thence at right angles southeasterly eighty feet; thence at right angles southwesterly twenty-two feet eight inches; and thence at right angles northwesterly eighty feet to said southeasterly line of Minna street at the point of commencement; together with the right of way in, upon, and over a street thirty-five feet in width, called Minna street, running from Tenth street to the southwesterly line of the lot of land thereby conveyed (to wit, said last described parcel of land); said street forever to be and remain free and open as a public street."

The complaint further shows that at the time the said James McElroy sold and conveyed as above, he was in possession and seised in fee " to the extent of one undivided sixth part " of a tract of land over and through which the way—Minna street—was to be kept open (as by McElroy's " covenant") from Tenth street to a transverse line running across the proposed Minna street, eleven feet four inches distant northeasterly from the line of the lot so as above sold and conveyed by James McElroy to plaintiff; and that, for the said distance of eleven feet four inches, the said James McElroy was, at the time of said sale and conveyance, the sole owner of the land through which the proposed Minna street was to run.

The complaint further alleges that after the death of James McElroy, and before the estate of the said James McElroy was distributed, one John McDermott, one of the tenants in common in the tract of land in which James McElroy, in his life-time was so, as aforesaid, the owner of an undivided one sixth part, instituted an action in the District Court of the Nineteenth Judicial District for said city and county, against all of the tenants in common of said tract (including the defendants herein, who are the widow and children and lawful heirs of James McElroy, deceased), and that such proceedings were had therein, that a final decree of partition was made;

that by said decree a tract of land, which includes the proposed Minna street for a distance of sixty-three feet six inches (immediately adjoining to and to the northerly of the eleven feet four inches exclusively owned by said James McElroy in his life-time) was assigned and allotted in severalty to the defendants in the present action, as the part and share of said tract to which the heirs of said McElroy were entitled in severalty.

The complaint further alleges that at the time of the conveyance by James McElroy to plaintiff, seven hundred dollars (the consideration therein named) was the full, fair, and just value of the land conveyed, with said street and right of way conveyed therewith, as aforesaid, but without such street and right of way said land was not worth said sum, and was wholly without means or way of ingress or egress from or to any public street or highway.

That, January 17, 1871, said James McElroy died intestate in said city and county whereof at the time of his death he was resident, leaving real and personal estate situate therein, and leaving him surviving defendant Susan McElroy, his widow, and the other defendants, his surviving children and lawful heirs; that upon petition and proceedings regular thereupon, and February 3, 1871, the Probate Court for said city and county duly granted letters of administration upon the estate of said deceased to said Susan, widow as aforesaid, who duly qualified and entered upon the discharge of her duties as administratrix; that due notice to creditors and claimants was had, etc. And afterwards, on January 27, 1876, by decreee of said Probate Court, the estate of said James McElroy, deceased, was distributed as follows, to wit: To Susan McElroy one third part, and to defendants Annie M. Jennie, Emma Mary E., and James P. McElroy, each two undivided fifteenth parts of the following real estate—(describing two tracts, one tract being the tract herein referred to as including eleven feet four inches of the proposed Minna street, and the other being the tract set aside to the widow and heirs of the said James McElroy, deceased, by the decree of partition).

The complaint also alleges that on January 2, 1876, Susan McElroy was, by the decree of said Probate Court, finally

discharged from her office of administratrix, and administration of the estate closed, and that all the property of which James McElroy died seised was community property of the said James and his wife, the said Susan. Further, that defendants, since the decree of distribution, have remained owners respectively of the land distributed to them. The complaint further avers that at the time of the execution of said deed of conveyance by said James McElroy to plaintiff, "said Minna street was not an open public street or highway, extending from the parcel of land conveyed as aforesaid, to said Tenth street, or for any part of that distance, or at all; and there is not and never has been any Minna street, or any street or way at all, in, upon, over, or along the whole or any part of said Minna street, as in said deed is described, and agreed forever to remain an open public street; but although there is not and never was any Minna street, as last stated, the property owners adjoining said parcel of land suffered and permitted plaintiff to freely pass over their lands to said parcel of land of plaintiff, and from thence to the public highway, up to within the past three or four months;" that since he has been forbidden ingress and egress from his land to the public streets and highways of the city, he has requested defendants to open said Minna street as in said deed described, or otherwise to afford plaintiff means of ingress and egress, but said defendants, although often requested, have refused, etc.

The special prayer is, that the defendants be compelled specifically to perform said covenant, and to open said Minna street to the extent and in the manner in said deed of conveyance described; and this is followed—in the event of the granting of the specific prayer not being practicable—by the general prayer that plaintiff have such other and further relief as shall seem meet, with costs, etc.

To the complaint the defendants, severally, demurred on the ground that the same did not state facts sufficient to constitute a cause of action.

The District Court sustained the demurrer, and the complaint not being amended, final judgment was rendered and entered that plaintiff take nothing by his action, and that defendants have and recover their costs, etc.

This appeal is from the judgment.

Many curious and interesting questions are suggested by the demurrer, some of which were argued with much force and ingenuity. But in the view we take of the case—even if appellant is entirely right with respect to the positions by him assumed—the demurrer was properly sustained. The conveyance from James McElroy to plaintiff is not set out at length in the complaint. The averment at the commencement of the pleading is that "*James McElroy*, since deceased, did, by his deed of a certain date, bargain, sell, etc., unto plaintiff, *his* heirs," etc. Nowhere in the complaint is there an averment that James McElroy ever attempted to bind his heirs by any covenant. The words "said street forever to be and remain free and open as a public street"—if they constitute any covenant—are either a covenant of seisin—in which case there was a breach so soon as the covenant was executed (since the grantor had no title to the right of way, nor any which could affect the rights of his co-tenants in the lands, over which the way was to run)—or they were a covenant in the nature of warranty, or for quiet enjoyment, in which case the covenant was not broken, until the assertion of paramount adverse and legal right. If the words quoted are a covenant of *seisin*, on which the covenantor became liable when the deed was executed, the claim for the breach should have been presented to the administratrix of the estate of James McElroy. As the law stood when the deed was executed, and at the death of the covenantor, the heirs became answerable upon the covenant to the extent of the land descended to them "in the case and in the manner prescribed by law." (Stat. 1855, p. 171.) Both the real and personal property of a decedent were made liable by our law for the satisfaction of *all* claims or demands existing against the deceased at the time of his death. To reach the assets of the estate, however, the claim had to be presented as required by the provisions of the Code of Civil Procedure relating to the settlement of the estates of deceased persons. (*Hartman* v. *Lee*, 30 Ind. 281.)

If, on the other hand, the words cited from the deed are to be construed as a covenant to warrant and defend covenantee in the enjoyment of the right of way against all lawful objec-

tors, or that covenantee quietly enjoy the use thereof undisturbed by any lawful obstruction, and the breach occurred after the death of covenantor, (and assuming the question not to be affected by any statute of this State), the heirs are not bound unless the deceased expressly covenanted that they should be bound. At common law to make the heir responsible it was essential that he be expressly named in the bond or covenant of his ancestor. (2 Wait's Actions and Defenses, 397.) And in an action against him as heir an averment was necessary that he was named in and bound by the bond or covenant. Such was the rule as to the ancient warranty. (Rawle on Covenants for Title, 4th ed., 461; Co. Litt. 384.) "If a covenantor covenants for himself and *his heirs,* the heirs are bound to perform it." (2 Bla. Com. 304.) "A covenant may be real, having for its object something annexed to or inherent in, or connected with land or other real property; although it may be purely personal to the covenantor, and his personal representatives, *because he has omitted to name his heirs.*" "A covenant, though clearly personal, or relating to personalty, may be a covenant real, because the heir *being named,* will be liable in respect of assets by decedent," etc. (Platt on Covenants, 63.) To create liability on the part of the heir it is requisite that the terms of the covenants specially provide for its performance by him. (Id. 449.)

In the complaint before us it is not stated, even by way of recital, that James McElroy covenanted that his heirs should be bound. The word heirs was not necessary under our statute to create or convey an estate in *fee simple.* (Stats. 1855, p. 171.) But there was no statute which made the lands descended to the heir liable for the covenants of the ancestor except the statute, which applied all assets to the payment of decedent's debt—through the machinery of the Probate Court. The very basis of plaintiff's claim here is that the probate law does not affect his right to maintain the present action.

Judgment affirmed.

Ross and MCKEE, JJ., concurred.