(156 App. Div. 271.)

DAVID STEVENSON BREWING CO. v. JUNCTION REALTY CO.

(Supreme Court, Appellate Division, First Department. April 18, 1913.)

1. EVIDENCE (§ 441*)—LEASE UNDER SEAL—MODIFICATION BY PAROL.
    A lease of real property under seal cannot be modified by a parol unexecuted agreement to reduce the rent.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

2. SPECIFIC PERFORMANCE (§ 64*)—RIGHT TO RELIEF—ADEQUATE REMEDY AT LAW.
    A lessee in a lease under seal was not entitled to maintain a suit to compel specific performance of a parol unexecuted agreement to reduce the rent; since, if a valid modification of the lease was made, complainant could raise the question and obtain relief in a Municipal Court action to recover the rent as authorized by Code Civ. Proc. § 2244.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 191–195, 198; Dec. Dig. § 64.*]
    Laughlin, J., dissenting.

Appeal from Trial Term, New York County.
Action by the David Stevenson Brewing Company against the Junc-

tion Realty Company to compel specific performance of an agreement modifying a lease. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Douglas Campbell, of New York City, for appellant.

Alfred B. Nathan, of New York City, for respondent.

SCOTT, J. The evidence is by no means satisfactory that the written agreement to reduce the rent was accompanied by an oral condition which, being unfulfilled, rendered it inoperative. The question is not important, however, because for other reasons the judgment appealed from is right.

[1] The lease was under seal: The agreement to reduce the rent was not. It is settled law that a contract or covenant under seal cannot be modified by a parol unexecuted agreement. McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257, 17 Am. St. Rep. 638. In this case the agreement to reduce the rent was never executed, in the sense in which that word is used in the statement of the rule, because it was never carried out. As was said in a recent case:

"While the agreement to reduce the rent remained unexecuted, it was void and inoperative. The lessors had the right to repudiate it at any time, and demand the full amount of rent provided for in the lease." Zindler v. Levitt, 132 App. Div. 397, 116 N. Y. Supp. 726.

[2] Furthermore, if a valid modification of the lease had been made, the plaintiff could have raised the question as to the amount of rent due in the Municipal Court under section 2244 of the Code of Civil Procedure as it now stands, and therefore a resort to equity was unnecessary.

The decision contains two findings (second and third) declaring what was the duty of the plaintiff with respect to the orders issued by the bureau of buildings and the tenement house department, and also declaring what rights accrued thereunder to the landlord. The case presented no issue regarding those matters which it was necessary to decide, and it was improper to include these conclusions of law in the decision, since they might embarrass the plaintiff in other litigation in which the question might be involved. To insure that no such result will follow, the judgment will be modified by striking out the words "on the merits," leaving the judgment a mere dismissal of the complaint, and as so modified it will be affirmed, with costs.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). The defendant owned the premises known as No. 141 West Twenty-Seventh street, upon which there were two buildings; one on the Twenty-Seventh street front, and the other, a tenement house in the rear, known as "No. 141 West Twenty-Seventh street, rear," access to which was obtained over an alley. The defendant leased the entire premises to the plaintiff's assignor for the period of 10 years commencing May 1, 1908, and the lessee there-

after duly assigned the lease to the plaintiff. In the summer of 1911 a building adjacent to the building in the rear of the premises was torn down, and this revealed the fact that the walls of the building on the rear of the defendant's premises were unsafe. The bureau of buildings for the borough of Manhattan caused the building to be inspected and surveyed, and duly required that the south and east walls should be removed "to footings," and that certain bulged and defective portions of the north wall and east and west chimneys should be removed and "rebuilt with proper material." The defendant insisted that it was the duty of the plaintiff to comply with the requirements of the bureau of buildings, and made formal demand upon it to that effect. The plaintiff denied that the obligation rested upon it. By the express provisions of the lease, the tenant covenanted and agreed to comply with "all the requirements of the board of health, municipal and state authorities and police and fire departments of the city of New York, and that he will not create or permit any nuisance in the premises hereby rented to the annoyance of neighboring occupants," and to keep the premises "both inside and outside in good order and repair." It is not necessary to decide whether it was the duty of the tenant as between it and the landlord to comply with the orders of the bureau of buildings in the premises, for those orders contemplated restoring and rebuilding the building in order to make it safe, and not the demolition of the building. If the duty rested upon the landlord, it could have complied with the requirements of the bureau of buildings, and have restored the building, and then the tenant would have been entitled to the enjoyment, use, and possession thereof. Instead, however, of doing this, at its own expense or for the account of the tenant, the landlord determined to demolish and not to rebuild, and so informed the plaintiff, and offering a reduction of $25 a month in the rent if the plaintiff would consent. The negotiations were conducted by one Silverman, plaintiff's tenant in the building fronting on Twenty-Seventh street, who had full authority to represent it, and by one Hellman for the defendant. The evidence shows that Silverman was willing to have the building demolished if he could obtain for plaintiff a fair reduction in the rent, which Hellman said the defendant would make; but Silverman contended that $50 per month would be a fair reduction, and before the amount of the reduction was agreed upon the defendant proceeded, not to comply with the requirements of the bureau of buildings, but to demolish the building and it hired a building wrecker for that purpose, who, with his employés, entered the building and cut off the water and gas, removed part of the roof, and disconnected and removed the washtubs, toilets, and plumbing and some of the doors, and the plaintiff's eight tenants were obliged to vacate the premises. The last tenant left on the 17th of August, 1911, and on that day the fixtures were sold and were removed on the evening of August 21st. Silverman for the plaintiff protested against the defendant's proceeding in this manner until an agreement with respect to the amount of the reduction of the rent had been reached and reduced to writing; and on August 21st the parties verbally agreed upon $40 as the reduction in the rent, and the defendant executed and delivered to Silverman a

proposition in writing addressed to the plaintiff, wherein the defendant agreed to allow a reduction of $40 a month in the rent until the expiration of the lease, or until such time as a new lease might be made between the parties, and a duplicate of it was signed by both Hellman and Silverman and retained by the former for the defendant. It was recited in the agreement that it was made in consideration of the consent of the plaintiff and his lessees to the demolition of the building by the defendant, and was to be without prejudice to the rights of the parties with respect to any claim for damages. Silverman, therefore, in behalf of plaintiff surrendered possession of the rear building, together with the key thereto, to the defendant, and the work of demolishing the building was immediately resumed by the wrecking crew which had been conducting the work in behalf of the defendant, and said fixtures were then removed. Shortly thereafter, and on the same day, the assistant to the chief superintendent of the bureau of buildings arrived with an emergency crew and took charge of the work and removed the walls which the bureau of buildings had called upon the landlord and tenant to remove, and shored up the rest of the building. The building has not been rebuilt.

Assuming that the contract for a modification of the rent rests in part in parol, I am of opinion that it was fully executed by the tenant, and that the landlord was not at liberty, after taking possession and proceeding with the demolition of the building with the consent of the tenant thus obtained, to recall the agreement and hold the tenant for the full amount of the rent prescribed by the lease. It is not necessary to decide the merits of the controversy as to whether the tenant was justified in preventing the demolition of the building by the landlord before an agreement had been made with respect to a reduction in the rent. The tenant apparently asserted that right in good faith and relinquished it upon the faith of the agreement subsequently made. I am of opinion that the rule of law that a parol agreement to reduce rent fixed by a lease under seal is void and inoperative in so far as it is unexecuted is not applicable to this case. That rule, of course, prevails where there is no consideration for the modification, and there is no authority, so far as I have been able to find, which holds that a landlord, by a parol agreement to reduce rent, may obtain the consent of the tenant of two buildings to remove one of them, and then under this rule repudiate the parol agreement as void and inoperative with respect to unpaid rent, without at least restoring the tenant to the position in which he was before the agreement was made. If it be applicable, it is a rule of law only, and a court of equity may and should, if necessary, enjoin the landlord from taking advantage of it. See McKinley v. Hessen, 202 N. Y. 24, 95 N. E. 32.

A question, however, is involved, which is not free from doubt, and that is whether this was not available as a defense to the summary proceeding for the possession on account of the failure to pay more than the reduced rental. The learned trial court was of opinion that it was not so available, and the tenant has been unsuccessful in two attempts to defeat summary proceedings thereby and has been obliged, in order to retain possession of the building on the Twenty-Seventh

street front of the premises, to pay the entire rent reserved by the lease. If the prevailing opinion on this appeal be sound, then surely it was not available as a defense in a court of inferior jurisdiction, and the only form in which the plaintiff could possibly obtain relief is the one in which it has brought the action. The majority of the court do not sustain the decision on the finding that the agreement to reduce the rent was conditioned upon the landlord being permitted by the municipal authorities to demolish the building, and it is at least strongly intimated therein that the judgment would not be sustained upon that ground. I am of opinion that the evidence clearly shows that the landlord took possession of the building and proceeded to demolish it, rendering it untenantable, on the understanding that it was to make a reasonably proportionate reduction in the rent, which was subsequently, and on the 21st day of August, 1911, reduced to writing in the manner stated. It is quite plain, I think, that the landlord should not be permitted to enforce the payment of more than the reduced rental, or to retake possession of the premises for the plaintiff's failure to pay more. The tenant, having been induced by the agreement to consent to surrender possession of the building, is precluded from claiming an eviction or asserting a claim for damages based upon the loss of the use of that part of the premises the possession of which it surrendered. There was, I think, an executed agreement for the surrender of that part of the premises. 24 Cyc. 1366–1378; Allen v. Jaquish, 21 Wend. 628.

It being doubtful whether there was a sufficiently formal agreement to reduce the rent to enable the tenant to successfully resist summary proceedings on that ground (Jackson v. City of New York, 62 App. Div. 46, 70 N. Y. Supp. 877. See, also, Stilwell v. Carpenter, 59 N. Y. 414; Bomeisler v. Forster, 154 N. Y. 229, 48 N. E. 534, 39 L. R. A. 240), and since the Municipal Court is without jurisdiction to decree equitable relief, or to pass upon the sufficiency of the evidence to warrant a court of equity to give equitable relief (Simon v. Schmitt, 137 App. Div. 625, 122 N. Y. Supp. 421), I am of opinion that the plaintiff should have been awarded a judgment decreeing a modification of the lease with respect to the rental, and enjoining the defendant from instituting any action or proceeding to enforce the lease for a greater rental than the reduced amount.