JOHN L. ARMSTRONG, Landlord, *v.* DAVID SHAPIRO and Others, Tenants.

County Court, Bronx County, November, 1922.

**Landlord and tenant — subletting of premises for business prohibited by lease — acquiescence of landlord by accepting rent — when forfeiture waived — right of tenant to exercise option to renew.**

A landlord who, with knowledge of the breach of the tenant's covenant, accepts rent, waives his right to claim a forfeiture of the lease and cannot, at least during the term, assert the forfeiture.

Where leased premises were used by the tenant as a glass store from 1912 to 1914 and were then sublet for a liquor store from 1914 to 1918, contrary to the lease, in which latter year the premises were again used as a glass and paint store, also contrary to the lease, the landlord who with knowledge of the use of the premises as a liquor store executed a new lease for a further term of five years commencing April 1, 1917, and collected the rent thereon, will be held to have consented to the subletting and such uses by the tenant or his subtenant or at least to have acquiesced thereto.

The tenant in October, 1921, pursuant to an agreement made in the previous February, exercised his option for a new term of five years, commencing April 1, 1922, by service of notice on the landlord demanding a new lease. The landlord refused to renew the lease and instituted summary proceedings against the tenant as a holdover. *Held*, that the landlord's waiver of the right to assert a forfeiture attached to the option agreement contained in the several renewal leases as well as to the original lease.

The tenant was not a holdover and was entitled, in the exercise of his option, to remain in possession and to a new lease as demanded.

SUMMARY proceedings.

*Frederick N. Van Zandt,* for landlords.

*Bernard S. Deutsch (Ernest P. Seelman,* of counsel), for tenants.

GIBBS, J. Mary Armstrong and John L. Armstrong, as executors and trustees under the will of John Armstrong, deceased, executed a lease whereby David Shapiro became tenant of the premises described in said lease for a period of five years, from April 1, 1912, to April 1, 1917. At about the same time the landlords agreed in writing to permit the tenant to exercise an option to renew the said lease for a further term of five years from April 1, 1917, upon condition that he comply with the terms of the original lease and give notice to the landlords of his intention to renew.

On January 11, 1917, landlords and tenant entered into a new agreement pursuant to the terms of the option agreement, whereby the tenant was to commence a new term of five years on April 1, 1917. On February 24, 1917, another option agreement was executed by the landlords containing substantially the same provisions as the previous option agreement. On October 5, 1921, tenant exercised his option by serving notice on the landlords and demanding a new lease. They refused to renew the lease and instituted summary proceedings to recover possession of the premises. Subsequently, Mary Armstrong died and John L. Armstrong became the sole owner of the premises, and by an order of this court was substituted as sole landlord. After a trial by a jury, counsel for the respective parties consented to withdraw the case from the consideration of the jury and submit the questions of law and fact to the court.

The landlord claims that the tenant is not entitled to exercise

the option agreement of February 24, 1917, because he has failed to comply with the terms of the agreement and is now holding over without permission of the landlord. Tenant alleges that he is not a holdover but is entitled to a lease for five years, inasmuch as he has exercised his option to remain in possession.

An exhaustive examination of the record reduces the proposition submitted to the court to the question whether there has been due performance of the terms and conditions of the lease of January 11, 1917. In short, the tenant must establish that he has complied with all the covenants of this lease.

Landlord contended on the trial that tenant had sublet the premises without written consent having been obtained; that he had there conducted a paint business and had also sublet the premises for a liquor store, although the lease specifically provided against such uses; that he violated the covenant not to use the premises or permit anything to be brought into the premises that would be extra hazardous on account of fire or otherwise and that would in any way increase the rate of fire insurance; and that he has not made and kept the premises, including the roof, in good order and repair, both ordinary and extraordinary.

There appears to be a discrepancy between the copy of the lease in the possession of the landlord and that in the possession of the tenant as to subletting premises. Landlord's copy contains a general covenant against subletting, whereas the tenant's copy has crossed out the phrase " nor let or underlet the whole or any part of the said premises." Both copies have a provision against subletting for certain purposes. Regardless of the discrepancy, it is conceded that the premises were sublet and were used as a liquor and paint store contrary to. the provisions of both copies of the lease.

The question then presenting itself is: Did the landlords consent to such subletting and such uses by the tenant or his sublessees? I find that they did, or at least that they acquiesced thereto. The record discloses that the premises were used by the tenant as a glass store from 1912 to 1914 and then sublet for a liquor store from 1914 until 1918; that in the latter year the premises were used as a glass and paint store. It is obvious that the landlords sanctioned the use of the premises as a liquor store during 1917 and 1918, as they executed a new lease for a further term of five years and collected the rent thereon, knowing that the premises were being used for such purpose. Also, the evidence establishes beyond all reasonable doubt that the landlords acquiesced in the use of the premises as a paint store and also to. the subletting of the premises by the tenant.

Landlord further contends that tenant has breached his agree-

ment by the execution of a lease to one Lipton in September, 1921, for a period of five years, commencing April 1, 1922. I do not attach any significance to this lease, as it was for a period subsequent to the expiration of the agreement under which Shapiro held and was canceled by him before it was to take effect.

It is settled law that when a landlord accepts rent after knowledge of the non-compliance with conditions of the lease, he thereby waives his right to claim a forfeiture. So in the instant case, the landlord having accepted the rent after knowledge of the breach of the covenants of the lease, he cannot, at least during the term thereof, assert a forfeiture.

As to the point that tenant failed to comply with the covenant to make repairs, I have concluded that although there is no creditable evidence that repairs were necessary, the tenant has made substantial repairs and has not breached this covenant.

This brings us to the final proposition, as to whether the waiver by the landlord estops him from asserting the breach by the tenant as a reason for refusing to grant a renewal. Forfeitures are not favored in law. Where there has been a breach of the condition imposed by the lease, the landlord may by many acts recognize the continued existence of the tenancy. The most common occurrence is acceptance of rent after the breach has become known. Courts will not permit the lessor to take advantage of an alleged forfeiture when it is found that by some act on his part it has been waived. The condition once waived is forever dispensed with. Upon breach of a covenant the lessor might have insisted on his strict legal rights and terminated the tenancy. *Dunn* v. *Steubing,* 120 N. Y. 232; *Bishop* v. *A. Ins. Co.,* 130 id. 488; *Collins* v. *Hasbrouck,* 56 id. 157. In *Dunn* v. *Steubing, supra,* the court said, on page 237: "A party to a contract containing a provision that it shall not be altered, modified or changed, except by written agreement signed by both parties, may, by conduct, estop himself from enforcing the provision against a party who has acted on and relied upon the conduct."

In *Bishop* v. *A. Ins. Co., supra,* the court, referring to the forfeiture, said: " * * * A party to a contract, containing a provision that it shall not be modified or changed except by a writing signed by him, may by conduct estop himself from enforcing the provision against a party who has acted in reliance upon the conduct, and so the acts of an agent, who possesses the power of the principal, or who has been held out by the principal to possess his power, in respect to the provision alleged to have altered or changed, may also estop his principal." Citing cases.

In *Collins* v. *Hasbrouck, supra,* it appears that the lease contained

a condition of forfeiture at lessor's options upon breach on the part of the lessee of a covenant not to sublet without written consent of the lessor. Such consent was given to a sublease for a specified term. Lessee executed sublease for the term specified and in addition gave subtenant an option to renew the sublease for a further time. Lessor accepted rent after notice of the extended term. It was held that the sublease was a breach of covenant and an act of forfeiture; that the forfeiture was incurred by creation of the extended term; that the assent to the subletting for the specified term did not bar a re-entry until the expiration thereof and so authorized the landlord to receive rent until then, without waiver, but that the right to re-entry arose upon the forfeiture and the acceptance of rent with notice thereafter, was a waiver thereof. The court, in concluding the opinion, said: " * * * though there was a forfeiture of the lease by the breach of the covenant, there are facts in the case as now appearing from which a waiver thereof was necessarily to be inferred. It is true, that a forfeiture may be suspended, and not waived (*Doe ex dem.* v. *Brindley*, 4 Barn. & Adol. 84). It must appear affirmatively that this is so. When there has been an act of forfeiture; when rent has accrued thereafter; when after knowledge of the forfeiture that rent has been accepted as rent by the landlord; if no other fact is shown, the necessary result is, that there is a waiver of the forfeiture."

So in the present case I have concluded that the landlord waived his right to assert a forfeiture during the term of the tenant's lease and having permitted the tenant to sublet and use the premises as a liquor and paint store cannot at this late day establish that the waiver applies only to the original lease and not to the option of renewal. By his act the tenant has been placed in a position which, in my opinion, the landlord cannot seek to avoid by claiming a breach of a covenant, which he or his predecessor had consented to. The waiver of the right to assert a forfeiture attached itself to the option agreement as well as to the original lease. The acts of the landlord bring this proceeding within the principle established by the authorities referred to above.

Accordingly, I find that the tenant is not a holdover and that he is entitled to a lease for a period of five years from April 1, 1922. Settle order on notice.

Ordered accordingly.