JOHN L. ARMSTRONG, Appellant, *v.* DAVID SHAPIRO, Respondent, Impleaded with FRANK DAIDONE and Others, Defendants.

First Department, December 14, 1923.

**Summary proceedings to dispossess — action was commenced in County Court — defense that defendant is holding over under exercised option contained in agreement executed after lease — option provided for notice and execution of new lease at higher rental — County Court did not have power to render judgment in favor of defendant decreeing specific performance of option — plaintiff is entitled to possession.**

In summary proceedings to dispossess commenced in a County Court, the court does not have power to award a judgment decreeing in effect the specific performance of an option agreement for a new lease interposed as a defense which was executed by the parties after the original lease and which provides for the service of notice, the execution of a new formal lease, and the payment of a

higher rental, since the County Court is without equitable jurisdiction to determine such a question.

Accordingly, a final order awarding the petitioner the delivery of the possession of the property in question must be granted.

APPEAL by the petitioner, John L. Armstrong, from a final order of the county judge of the county of Bronx in summary proceedings to recover the possession of real property, entered in the office of the clerk of said county on the 6th day of December, 1922, dismissing the petition upon the merits.

*Frederick N. Van Zandt,* for the appellant.

*Bernard S. Deutsch* [*Ernest P. Seelman* with him on the brief], for the respondent.

DOWLING, J.:

A written agreement of lease dated January 11, 1917, was entered into between Mary Armstrong and John L. Armstrong, as executors of and trustees under the last will and testament of John Armstrong, deceased, and David Shapiro, by the terms of which the premises known as No. 4203 Third avenue, in the borough of The Bronx, city of New York, were rented to Shapiro for the term of five years commencing on the 1st day of April, 1917, and ending upon the 31st day of March, 1922, upon the terms, covenants and conditions specifically set forth therein. Shapiro took possession of the demised premises under the lease.

Thereafter on February 24, 1917, said Mary Armstrong and John L. Armstrong, as said executors and trustees, executed and delivered to said David Shapiro an instrument which granted said Shapiro an optional right to a further lease of said premises for five years from April 1, 1922, at the yearly rent of $1,740, upon the same terms and conditions in other respects as contained in the lease then in force, but upon the express conditions precedent " that David Shapiro or his legal representatives, faithfully perform and carry out all the covenants and conditions on his or their part to be performed, contained in a certain lease, made, executed and delivered by us, to the said David Shapiro for five (5) years from April 1st, 1917 to April 1st, 1922, covering the premises known and designated as No. 4203 Third Avenue," and further providing: " If the said David Shapiro or his legal representatives shall elect to exercise this option, they shall serve a written notice to this effect on the undersigned, not later than January 1st, 1922, and a formal lease for such further period shall be prepared and executed by all the parties thereto on or before February 1st, 1922, otherwise this option shall become null and void and of no effect."

The written agreement of lease covering the premises in question contains, among others, the following covenants to be performed by the tenant:

(a) " nor let or underlet the whole or any part of said premises." [This clause was stricken out in the duplicate original lease offered in evidence by the tenant];

(b) " nor permit the same to be occupied or used for any business deemed extra hazardous on account of fire or otherwise; "

(c) " nor suffer or permit their use for any business or purpose which would cause an increase in the rate of fire insurance on said building; "

(d) " shall and will make and keep said premises including the roof in good order and repair both ordinary and extraordinary during the term; "

(e) " to use said rented premises for the glass business and for dwelling purposes or lofts and agrees that he will not let or sublet the store or any part of said premises for the liquor business, moving picture or show business, or for the sale of paints   *  *  *."

Having entered into the occupation of said premises under said agreement, Shapiro continued in possession on and after the 31st day of March, 1922, and at the time of the trial of this proceeding, September 11, 1922, was still in occupation thereof.

On September 19, 1921, David Shapiro entered into an agreement in writing with Isaac Lipton, by the terms of which he undertook as landlord of said premises to let the same unto Isaac Lipton for a term of five years commencing on the 1st day of April, 1922, and terminating on the 31st day of March, 1927, " for the sale of paints and painters' supplies and for dwelling purposes or lofts, but shall not use the said building or premises for the sale of liquors or for moving picture or show business or for factory purposes necessitating the use of heavy machinery," at an annual rental of $3,000 payable in equal monthly installments.

After entering into the agreement to lease, Shapiro sent the following letter to the landlords:

" Mary Armstrong and                    *Oct. 5th,* 1921.
      " John L. Armstrong,
             " as Executors, etc.
    " c/o Mrs. M. Armstrong,
        " 383 Selye Terrace,
            " Rochester, N. Y.:

" Dear Sir and Madam.— Pursuant to the terms of our lease and the agreement supplemental thereto, I beg to advise you that I do hereby exercise and elect to exercise my option for a further lease of premises #4203 Third Avenue, The Bronx, for a period of

five years from April 1st, 1922, the date of the expiration of my
present lease, at the yearly rent of $1,740, payable monthly in
advance, upon the same terms and conditions in other respects
as contained in the present lease, and I am prepared to execute a
formal lease for such further period at once.

" Please attend to this matter and oblige,

" Very truly yours,

" D. SHAPIRO."

To this the landlords replied as follows:

" *Oct.* 11, 1921.

" MR. D. SHAPIRO,

" New York City:

" DEAR SIR.— Your registered letter received and contents
noted. We are taking same under advisement and am writing
Mr. Woodall and if we find same has been kept in good repairs
and according to agreements we will go ahead with same.

" Yours truly,

" J. L. ARMSTRONG."

After Shapiro took possession of the premises he let or underlet
part of said premises from time to time to various persons between
the 1st day of April, 1917, and the 31st day of March, 1922, without
the written consent of the petitioners, including sublettings to one
or more of his sons who conducted a separate business in part of
said premises under the name and style of D. Shapiro Sons. Also
during the term of said written agreement of lease, and particularly
during the year 1917, and part of the year 1918, the said David
Shapiro let or underlet a part of said premises to a tenant for the
purpose of conducting and who did conduct a liquor business
therein during said period. Further, since the year 1918, David
Shapiro has conducted in a part of said premises a business for the
sale of paints in connection with which paint was purchased and
kept in and sold from said premises until March, 1922.

The trial court has found as a fact that the aforementioned
subletting of premises by Shapiro was with the knowledge, consent
and acquiescence of the petitioners, and that rent was accepted
by them after knowledge of such facts and after knowledge of the
fact that Shapiro had entered into said written agreement of lease
with Isaac Lipton, and that prior to February 1, 1922, Shapiro
had made substantial repairs and had not breached his covenant
with respect thereto.

The landlords never executed a new lease to Shapiro, who
remained in possession, whereupon the former brought summary
proceedings against the latter as a holdover.

The answer of the tenant set up as a separate defense the making of the lease in writing on January 11, 1917, and the making of the option agreement by the landlords on February 24, 1917, " whereby the said landlords granted unto this defendant an option for a further lease of said premises for an additional term of five years from April 1st, 1922, at the yearly rent or sum of $1,740, payable monthly in advance upon the same terms and conditions in other respects as contained in the said lease hereinbefore referred to."

It then set up the provision in said option agreement whereby " in the event that the said tenant or his representatives shall elect to exercise this option, they shall serve a written notice to such effect on the landlords by registered mail not later than January 1st, 1922."

It then avers that, pursuant to the agreement, " this tenant did on or about the 5th day of October, 1921, notify the landlords in writing that he, the said tenant, elected to exercise the said option for a further period of five years from April 1st, 1922, in accordance with the terms and provisions of said option agreement, and further notified the said landlords that he was prepared to execute a formal lease for such further period at once.

" *Fifth.* That by reason of the foregoing, the term of this tenant has not yet expired.

" *Wherefore* tenant demands judgment dismissing the petition of the landlords, with costs."

It thus becomes apparent that the defense asserted was a purely equitable one, and that the landlords were entitled to possession of the premises, as against the tenant as a holdover, unless such a defense was sustainable. The learned trial court recognized this, and as part of his decision made the following finding:

" 13. That the tenant is now in possession of the said premises and has been in said possession since April 1st, 1922, by right of the said option agreement executed on the 24th day of February, 1917, and by virtue of said option agreement, was entitled and is entitled to a lease from the said landlord for a period of five years from April 1st, 1922, and as a conclusion of law, that the petition of the landlord for a judgment and final order herein, must be dismissed upon the merits, and that the tenant, by reason of the facts aforesaid, should have judgment in his favor upon the merits upon the defense interposed by him that he has the right to the possession of said premises from and after April 1st, 1922, by virtue of the option agreement of February 24th, 1917, and by virtue of his right thereunder, to a new lease from February 1st, 1922, to and including March 31st, 1927."

So that the learned trial court in effect decreed specific performance of the option agreement for a new lease. That this cannot be done in a summary proceeding was decided by this court in *Simon* v. *Schmitt* (137 App. Div. 625), wherein Mr. Justice MILLER said (at p. 626): " On the 6th day of April, 1909, the respondent began an action in the Supreme Court against the petitioner to compel specific performance of the covenant above quoted. After the expiration of the term provided for by the lease, this proceeding was instituted to remove the respondent on the ground that he was holding over after the expiration of his term without the permission of the landlord. As a defense, the respondent claimed to be entitled to specific performance of the said covenant for a new lease, and the final order of the Municipal Court provides that the respondent is ' entitled to the appointment of appraisers as provided for in the said lease mentioned in the petition, and to a renewal of said lease if he accepts the result of the appraisal,' and that he is entitled to retain possession until specific performance shall be decreed.

" It is a somewhat startling proposition that the Municipal Court can adjudicate a party's right to specific performance of a contract. If the Municipal Court had jurisdiction to pass upon the equitable defense interposed in this case, its judgment, even without the provision above quoted, would be conclusive, and the court having jurisdiction to decree specific performance would have to direct the entry of a decree upon proof of the judgment. It is true that section 2244 of the Code of Civil Procedure* provides that the answer to a petition in summary proceedings may set forth ' a statement of any new matter constituting a legal or equitable defense or counterclaim.' But that section must be read in connection with article 6, section 18, of the Constitution, which provides: ' The Legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article.' It is said that the trial of the questions of fact and law upon which the right to specific performance depends, and the adjudication of such right is not the exercise of equitable jurisdiction so long as a formal decree, directing specific performance, is not entered. The constitutional inhibition has reference to substance, not mere form. It was not intended that the Supreme Court should be an arm of the Municipal Court to direct the entry of decrees upon its adjudication. If the construction of section 2244 contended for be adopted, I think that

* Now Civ. Prac. Act, § 1425, as added by Laws of 1921, chap. 199.— [REP.

it is plainly unconstitutional. For that reason we should seek a construction in harmony with the constitutional provision. It is unnecessary now to define precisely what defenses or counterclaims may be interposed to a petition · in summary proceedings. It is sufficient on this appeal to hold that the Municipal Court cannot determine the right of a party to a specific performance of a contract." · (See, also, *Stevenson Brewing Co.* v. *Junction Realty Co.*, 156 App. Div. 271.)

In the present case it is to be noted that (1) the right to a renewal is not created by any provision of the lease itself, but by a separate and independent written memorandum, signed by the landlords, and not delivered contemporaneously with the lease, but made more than a month thereafter; (2) the renewal was not automatically created, but depended upon the giving of notice by the tenant before a specified date; (3) the existing lease was not automatically extended by the giving of the notice of exercise of the option, but a new formal lease was to be prepared before a specified date; (4) the extended term of the lease was to be at a different rental from that provided in the original lease.

We are not dealing, therefore, with a case where, by provision of the lease itself, an option for its renewal was created, after the exercise of which the lease was extended for a further period, upon the same identical terms and conditions. We are dealing with rights created under an option contained in a separate and distinct instrument, upon the exercise of which option a new lease was to be prepared. To enforce these rights, the aid of a court of equity must be invoked, and the County Court, as the Municipal Court, is without equitable jurisdiction to determine such a question.

· As the tenant was a holdover, unless his right to remain in possession was adjudicated by a court of equity in enforcement of his option, and as the County Court was without power to declare such right, the order appealed from should be reversed and a final order made awarding the petitioner the delivery of the possession of the property in question, with costs of the proceeding and the costs and disbursements of this appeal. · ·

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed and final order directed awarding petitioner delivery of possession of the property in question, with costs of the proceeding and of this appeal. Settle order on notice.