KING-BLAIR CO. *v.* SCHLOSS.

1. SPECIFIC PERFORMANCE—OPTION FOR EXTENSION OF LEASE—LAND-LORD AND TENANT.

> Where lessee surrendered part of leased premises and expended substantial sum of money ·in improving leasehold premises in consideration of option for extension of lease, it is entitled to specific performance, although option prepared and signed by lessors was not signed by lessee.

2. SAME—NOTICE—ESTOPPEL.

> Lessee's right to specific performance of option for extension of lease should not be defeated by its technical violation of lease, where it had continued during whole period without objection by lessors, who had notice thereof.

Appeal from Wayne; Runnels (Herbert W.), J., presiding. Submitted January 8, 1931. (Docket No. 61, Calendar No. 35,404.) ·Decided January 23, 1931. Rehearing denied April 9, 1931.

. Bill by King-Blair Company, a Michigan corporation, against Albert W. Schloss and another for specific performance of an option for extension of a lease. Decree for plaintiff. Defendants appeal. Affirmed.

*Lightner, Oxtoby, Hanley & Crawford,* for plaintiff.

*Stevenson, Butzel, Eaman & Long (Rockwell T. Gust* and *Victor W. Klein,* of counsel), for defendants.

NORTH, J. ·Plaintiff occupies property fronting on Woodward avenue in Detroit as tenant of de-

fendants under a 15-year lease which expires May 1, 1931. The leased property is a four-story store building. The lessors reserved in the lease a right to construct upon this building four additional stories. This they decided to do in 1922. As a means of securing space in which to install a stairway and an elevator for the use of tenants in the newly-constructed upper stories, defendants desired to secure from plaintiff a release of a portion of the rented premises. At the same time plaintiff was desirous of securing an option from defendants for a ten-year extension of the leasehold term; and plaintiff also desired to make alterations and improvements in the portion occupied by it. These alterations would require an expenditure of more than $50,000. After agreeing upon the details of these transactions, the parties secured the service of an attorney in reducing to writing their respective undertakings and obligations. Two instruments were prepared. One covered the rights and duties of the parties incident to the construction of the additional four stories and plaintiff's proposed alterations. It is referred to as the building agreement. The other instrument embodied the so-called option for the extension of plaintiff's lease for an additional term of ten years. Both of the written instruments were properly executed by the defendants and left by them in the hands of the attorney to be delivered to plaintiff upon being signed by it. Defendants by letter notified plaintiff of the execution and delivery of these instruments to the attorney. Plaintiff neglected to go to the attorney's office to sign the instruments and secure delivery to it of duplicate copies. However, the agreement between the parties relative to the construction of the additional four stories was carried out, the work

being completed in 1923. Plaintiff had previously completed its alterations and improvements. Incident to defendants' construction work, which was more difficult and took more time than the parties contemplated, plaintiff sustained a substantial damage to its business in addition to that anticipated by the parties. Urging this as a reason, plaintiff repeatedly solicited defendants to give it an option to extend its lease for a still longer period, 20 or 30 years. The defendants declined to grant this further optional extension, and, instead, rather insistently endeavored to induce plaintiff to also take a lease of the four upper stories for which defendants had not been able to secure tenants. Plaintiff declined entering into a lease for the upper portion of the building on the terms defendants demanded. These negotiations and solicitations continued along from time to time until the latter part of 1924. In November of that year plaintiff wrote Mr. Schloss and attempted to secure delivery of the signed option. This was refused and subsequently the bill of complaint in this case was filed for the purpose of securing specific performance. In the circuit court plaintiff was granted the relief sought, and defendants have appealed.

The defense is urged that the agreement for the optional extension was never consummated between these parties since it was not signed by plaintiff nor delivered to it by the attorney to whom it was entrusted. Defendants assert plaintiff was unwilling to accept the ten-year option, that it did not do so, but, instead, was insisting upon an option for a longer term. But plaintiff contends that the ten-year option had already been granted to it, and it was attempting to secure one for an additional period. While this option in form was prepared for

the signature of each of the parties, in fact it was practically a unilateral undertaking, not binding upon plaintiff except it saw fit to exercise the option on the terms and conditions therein specified. Consideration of the record in the case leads to the conclusion that the so-called construction agreement and option were incident to and a part of the same transaction; and that plaintiff had the right to rely upon the fulfillment of the agreements entered into in its expenditure of a substantial sum of money in altering and improving the leasehold premises. Notwithstanding the construction agreement was not signed by plaintiff, as noted above, the work was fully performed and resulted in defendants taking a substantial portion of plaintiff's leased premises. The option as prepared and executed by defendants embodies the terms agreed upon by the parties, and it was given incident to and as a part of a transaction which resulted in ample consideration for the option passing from plaintiff to defendants. At no time did plaintiff renounce or disclaim its rights under the option. Instead, it sought a still longer term. On this phase of the case, the circuit judge found:

"A part of the consideration for the extension of the lease was the delivering over to the defendants a portion of the leased premises—certain floor space, certain show windows, and a change in the elevator system, all made necessary by its probable occupancy by some other tenant or tenants. This consideration has all passed to the defendants."

The record sustains the above finding; and renders the option binding upon defendants notwithstanding neither it nor the construction agreement was signed by plaintiff.

The further defense is urged that by the terms of the option itself it is binding upon the defendants only on the following conditions embodied therein:

"It is distinctly understood that the second party. or such successor as under the terms of said lease is lawfully permitted, shall be entitled to take advantage of said option only on the condition that the terms, stipulations and conditions of said leasehold instruments at all times have been fulfilled and complied with by the tenants, and that at the time of the giving of notice of acceptance of such option there shall be no default in respect of the relations of the tenant to the landlord."

As stated in their brief, defendants' contention is:

"Plaintiff had been and was at the time of the institution of this suit, and at the time of the trial in default under the terms and covenants of its lease, the performance of and the compliance with such covenants having been specifically made a condition precedent to the right to exercise the option."

In this connection the defendants rely upon the provision in the lease that, with certain exceptions not here pertinent, the basement and ground floor of the leased building were to be used expressly and solely by the second party for a retail clothing store. The lease also provided that plaintiff might retail "such other goods as are generally sold in such retail clothing stores of high class and character." It is undisputed that for at least two years prior to the trial of this case a part of the basement had been sublet by plaintiff to the Nunn-Bush Shoe Company and another portion to Henry the Hatter. It goes without saying that this subletting was at least a technical violation of the lease. However,

it appears beyond question that this subletting was known to defendants and continued during the whole period without objection. No claim is made that occupancy by these subtenants is in any way detrimental to defendants' interest. The conditions of which they now seek to take advantage existed during the period defendants were endeavoring to lease the whole premises to plaintiff. While perhaps it was not necessary as a matter of pleading, it may be noted that this so-called violation of plaintiff's lease was not mentioned in defendants' answer, nor was it at all stressed at the time testimony was taken in the circuit court. It is obviously an afterthought, under the circumstances somewhat technical, and it would be inequitable to permit defendants to use it as a means of depriving plaintiff of its valuable rights under the option which it now seeks to have specifically enforced. A careful review of the record leads to the conclusion that a just and equitable determination of the controversy between these parties was made by the decree of the circuit court. It is affirmed, with costs to appellee.

WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred. BUTZEL, C. J., did not sit.