[Civ. No. 14143. First Dist., Div. One. Dec. 6, 1949.]

MARY KALITERNA, Respondent, v. NELLIE SWALL WRIGHT et al., as Executrices, etc., Appellants.

Earl C. Berger for Appellants.

Joseph A. Brown and Harry Gottesfeld for Respondent.

BRAY, J.—In an action for declaratory relief, defendants appealed from a judgment in favor of plaintiff determining a lease to be in force and that an option to renew had been validly exercised.

## FACTS

Resolving conflicts in favor of plaintiff, the evidence shows the following:

In 1935, plaintiff noticed the property here involved, which was then unimproved real property along Bayshore Highway in Santa Clara County near Moffett Field, and investigated to determine if it was available for rental. Someone told her that the land belonged to Mr. and Mrs. Swall and that a Mr. Wright had charge of the property, so she saw Wright about leasing it. (Wright was the son-in-law of the Swalls and was in business as a realtor.) She negotiated with Wright and eventually signed a 10-year lease, which provided for

rent at $25 monthly for the first year, $30 monthly during the second year, and $35 monthly thereafter for the last eight years. The lease was to run from February 1, 1935, to January 31, 1945. An option for renewal could be exercised by giving notice to the lessor or his agent 60 days prior to the expiration of the lease. At that time the parties would agree on the rental for the new term or have it set by an arbitrator who would be selected by a nominee of each party. (The lease contained other provisions which will be noted as is necessary.) Wright had negotiated the lease and signed it as a witness.

Plaintiff went into possession and erected a building on the premises. Whenever she had anything to do concerning the property she saw Wright. She only saw Mr. Swall once, shortly after the lease had begun. He came into the building, introduced himself, complimented her on the appearance of the place, and told her to see Wright, who had full authority, if she needed anything.

Mr. Swall died in October, 1935, and Mrs. Swall apparently became sole owner of the property.

Wright told plaintiff to pay the rent to Mrs. McPheeters (another daughter of the Swalls and the sister of Mrs. Wright). This was done. Early in 1936 when the rent was due to go up, plaintiff spoke to Mrs. McPheeters and asked if the rent could remain at $25 because of her distressed financial condition. Mrs. McPheeters said she would talk to Wright. Thereafter Wright told plaintiff he had talked to Mrs. McPheeters and the Swalls and that $25 would be satisfactory. Thereafter plaintiff paid $25 monthly, which was accepted. Payment was usually by check which was endorsed by Mrs. McPheeters.

Mrs. McPheeters testified that the rent was not paid for nine months of 1937, but plaintiff stated that it was. At any rate, Mrs. McPheeters testified that she thereafter accepted rent each month at $25 monthly through 1944, that she had not complained to plaintiff that the lease was not being performed, no notice was served on plaintiff and no new writing was signed by the parties.

Since the lease would expire on January 31, 1945, a notice of renewal would have to be served on Mrs. Swall or her agent before December 1, 1944. Early in September of 1944 plaintiff's attorney, Gottesfeld, sent plaintiff some notices of renewal and told her to serve them. She went to see Wright who said there was plenty of time before the lease would expire and she need not be in a hurry. He said Mrs. Swall was very ill and could not be disturbed, but that he would take

care of serving her with one of the notices. Thereafter he told plaintiff that he had served Mrs. Swall. The notice contained a request for discussion as to the new rental rate or arranging for arbitration in accordance with the lease.

Gottesfeld returned from a trip East in November. He spoke to Wright, who said that the new lease should be prepared by a lawyer, and that one Berger would represent the lessors. (Berger, attorney for defendants, is the son-in-law of the Wrights.) Gottesfeld thereupon phoned Berger and asked what was being done. Berger replied that he was busy, that Mrs. Swall was too sick to be disturbed, and that he would talk to Gottesfeld later about the renewal of the lease. On November 30, two days after the phone call, Gottesfeld wrote Berger, asking Berger to phone him the following day.

Gottesfeld next prepared new notices, had them signed by plaintiff, and sent them, on December 1, 1944, to Berger, Wright, and Mrs. Swall, so that there would be no argument about the notice having been given. On December 4, Berger wrote Gottesfeld denying that plaintiff had any right to renew the lease.

This was apparently the first intimation to plaintiff that the lessors thought the lease had been breached in any way. Although on one occasion, at least, she sold the business, she always kept her interest in the lease. The lease required the tenant to pay taxes on improvements, but there was conflicting evidence whether any taxes were ever assessed on the improvements and there was no evidence of any demand for such taxes or that any were paid by anyone. The lease required the tenant to keep insurance on the improvements, but the only reference to this point was plaintiff's statement that she kept insurance in force until the insurance companies refused to give any more insurance because of frequent fires along the highway. The lease provided that the property was leased "for the purpose of conducting business thereon," but plaintiff denied she had ever converted part of the premises into residential quarters. The lease provided that the tenant should not make any alterations without the written permission of the lessors, and plaintiff admitted that in 1936 or 1937 she had enlarged the building somewhat without getting such permission. There was no evidence that the lessors had ever complained or that the alteration was not for the benefit of the property.

Following Berger's letter of December 4, there was a further exchange of letters reaching no agreement, and plain-

tiff filed this action for declaratory relief on December 12, naming Mrs. Swall as defendant. She died December 25, 1944, and her daughters (Mrs. McPheeters and Mrs. Wright) were named executrices. In March of 1945, the superior court issued an order substituting them as defendants. They were also joined as individuals, since there was a possibility they had received the property prior to the death of Mrs. Swall by gift deed.

## PLEADINGS

Defendants raise many legal questions, many of them highly technical. They contend that there was no valid complaint before the court, a demurrer having been sustained to the last complete amended complaint. This was the seventh complaint. Thereafter plaintiff filed an "Amendment to Second Amended Complaint." The pleadings are quite confusing. However, defendants are precluded from raising the point here for two reasons: first, they did not urge it at the trial, and secondly, the state of the pleadings was clarified by stipulation. A discussion arose as to whether defendants had answered the "second amended complaint." After some discussion of the matter, and without any contention by defendants that there was no "second amended complaint" in existence, the following occurred: "MR. BERGER: Well, I will take that stipulation. MR. BROWN: Now, that stipulation is that your answer denominated 'Answer and Cross-Complaint,' filed April 18, 1946, shall be deemed the answer to the second amended complaint and the amendment thereto. MR. BERGER: And I want my reply to your amendment to stand, you made an amendment to your amended complaint, didn't you, and I answered that? MR. BROWN: Just one short paragraph. Now, that is all deemed as applicable to the second amended complaint, is that right? MR. BERGER: Right. MR. BROWN: Now, your Honor, I think that the record is clarified on that. Now, your Honor——''

In their demurrers to the various complaints defendants urged that no copy of the lease was attached to the particular complaint. In view of the stipulation and the fact that the execution of the lease was admitted, the failure to attach a copy to the pleadings is unimportant.

Point is made of the fact that the executed oral modifications of the lease were not pleaded. No objection to the introduction of evidence concerning the modifications was made and they were treated as an issue by both sides at the

trial. Courts do not reverse judgments because of missing allegations in the pleadings concerning matters treated as trial issues. This is well shown by the decisions allowing the trial court to instruct on such issues. See *Megee* v. *Fasulis,* 65 Cal.App.2d 94, 101 [150 P.2d 281].

## DENIAL OF JURY TRIAL

While the court stated, in effect, that it would determine the equitable questions and reserve the jury for questions of fact, it actually decided all questions itself. Defendants contend these fact issues should have been submitted to the jury. Defendants cite no authorities to support their position. It is well settled in this state that in actions for declaratory relief the court may refuse to submit disputed questions of fact to a jury and may itself determine them. (*Herrlein* v. *Tocchini,* 128 Cal.App. 612 [18 P.2d 73]; *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747].)

## REOPENING CASE

Plaintiff contended that no taxes were ever assessed on the improvements. After the case was submitted, plaintiff asked permission to reopen to offer in evidence the certificate of the tax assessor to the effect that the improvements had not been assessed. Defendants did not object to the reading into evidence of the certificate. In fact, they then asked and received permission to put Mrs. McPheeters on the stand to testify that taxes were paid on the improvements. The matter of reopening a case for further evidence is entirely in the discretion of the trial court. There was no abuse of that discretion.

After the case was finally submitted for decision defendants filed a document in which they stated that they "hereby interpose their objection and exception" to exhibits which plaintiff's counsel advised were to be filed. If this is an objection to an exhibit which was admitted in evidence and which they heard read and as to which they made no objection, the objection comes too late. Moreover, there are no grounds given.

## NUNC PRO TUNC FINDINGS

On January 5, 1948, the court signed findings of fact and conclusions of law. For some reason they were not filed before the judgment was signed and filed. This was on January 8. Thereafter, on July 2, pursuant to motion and after

argument, the court ordered the findings and conclusions to be filed *nunc pro tunc* as of January 5. We have recently held that, where findings are required and are not waived, a judgment without findings is a nullity. However, here there were findings actually signed before the judgment. The fact that they were not on file at the time of signing and filing the judgment is not important. They were in existence and were the basis of the judgment. The court was well within its rights in ordering them filed *nunc pro tunc* as of the day of their signing. Defendants have cited no case holding otherwise. "Notwithstanding sections 632 and 633 of the Code of Civil Procedure make it essential to a decision of a case tried without a jury and in which findings are not waived, that findings of fact and conclusions of law must be made and filed, the court has the same authority to order such findings to be filed *nunc pro tunc* as it has to order the judgment thereon to be so entered." (*Norton* v. *City of Pomona*, 5 Cal.2d 54, 62 [53 P.2d 952].)

### Was Plaintiff Entitled to Renew?

 Defendants contend that plaintiff had breached the lease in many ways and therefore was not entitled to renew. These claimed breaches were: (1) That plaintiff had not paid the agreed rental. The court found that the rental was modified by mutual agreement and that the reduced rental for the entire period was paid. The evidence on this subject was conflicting, but there was sufficient to support the court's finding. (2) That plaintiff was not in continuous occupancy during the 10 years. The evidence supports the finding that she was. During a portion of the time the vendees to whom plaintiff sold the tavern business conducted on the premises were the actual occupants, and for a period plaintiff subjected herself to proceedings under section 74 of the Bankruptcy Act [47 Stats. 1467, 11 U.S.C.A. § 202]. There was no provision against assigning the lease or subletting. Defendants contend that the rent was not paid during this period. Plaintiff testified and the court found that it was. While the evidence might support defendants' contention that the acceptance of less rental did away with the lease, and that thereafter plaintiff occupied the premises on a month to month tenancy, nevertheless it also supports the theory upon which the court acted, that it constituted merely an executed oral amendment of the lease. The change of rental did not constitute a novation, and hence *Garthofner* v. *Edmonds*, 74 Cal.App.2d 15

[167 P.2d 789], and *McClintick* v. *Frame*, 98 Cal.App. 338 [276 P. 1033], discussing consideration for a novation, do not apply. It constituted an executed oral agreement. (See Civ. Code, § 1698.) Plaintiff testified that in 1936 she "went into bankruptcy" and later received a discharge. There is no evidence in the record as to what took place, whether the trustee accepted or rejected the lease, and hence *In re Neff*, 157 F. 57 [84 C.C.A. 561, 28 L.R.A.N.S. 349], and *Summerville* v. *Kelliher*, 144 Cal. 155 [77 P. 889], do not apply. Neither the proceedings in the bankruptcy court nor the occupancy by her vendees constituted an interruption of plaintiff's occupancy under the lease. (3) That plaintiff did not pay taxes on the improvements. There was evidence which the court believed, that no taxes were levied upon the improvements. As no taxes were levied there could be no breach of this covenant. (4) That plaintiff did not comply with the covenant requiring her to keep the premises covered by fire insurance. She testified that the insurance company refused to allow any more insurance because of frequent fires along the highway. There was no dispute of this testimony. If, through no fault of plaintiff, this covenant could not be complied with, her failure to do so cannot be considered a breach of the lease. (5) That the premises were and are being used for residential as well as business purposes, while the lease restricts their use to business purposes. It is doubtful if living upon premises which are also being used for the conducting of a tavern constituted a violation of a clause which merely states that the "property is hereby leased for the purpose of conducting business thereon." If it does, such violation was waived, as at no time did defendants object to its being so used. (6) That plaintiff made structural changes without asking permission. Plaintiff admitted that in 1936 or 1937 she had enlarged the building without getting permission of the owners. As the alteration was for the benefit of the property and was never objected to during the long period of the lease, any breach of the lease thereby was waived.

Defendants take the position, particularly applicable to the alleged breach of the lease by failure to pay the stipulated rent and by the making of alterations without permission, that a landlord's waiver of the performance of the covenants of a lease does not entitle a tenant to a renewal of the lease; that a waiver will prevent a forfeiture under the lease, but that to enforce a renewal covenant the tenant must prove full performance of all covenants of the lease. They rely princi-

pally on *Behrman* v. *Barto,* 54 Cal. 131, and *Swift* v. *Occidental Mining etc. Co.,* 141 Cal. 161 [74 P. 700]. The first case is merely authority for the well established principle that the right to enforce the renewal provision of a lease depends upon the tenant performing the terms of the lease. The Swift case holds that the mere failure of the landlord to insist upon a forfeiture for waste or breach of covenant, does not preclude the landlord from refusing to grant another term. The case expressly holds that there was no waiver of performance of the conditions of the lease. In the case at bar there was such waiver. ■ Neither of the above cases is authority for defendant's contention that oral modifications of a lease, or breaches that are waived, justify a refusal to grant a renewal provided in the lease.

The correct view is stated in *Title Insurance & Guaranty Co.* v. *Hart,* 160 F.2d 961, which held a tenant entitled to renew although there had been some minor breaches of the lease. The decision points out that the language about forfeitures and renewals in the Swift case was not necessary to the decision of that case (160 F.2d at p. 970), and suggests that failure to renew a lease where the tenant had made large investments and improved the property would be "in the nature of a forfeiture," so that the court, under general equitable principles, should be careful to protect the tenant. (P. 971.)

■ In the present case there was no breach by plaintiff which would justify a court in holding that plaintiff had lost the right to renew. Under any reasonable standard, plaintiff here had fully performed, entitling her to renew by exercising the option. The evidence here shows that the lessor agreed to accept, and did accept, the reduced rental over the largest portion of the leased term; also, that the only proved breaches of the lease were waived. Moreover, the lease contained a grant of an option to renew, which was not made conditional upon the full performance of the terms of the lease.

## PROBATE COURT

■ In a more or less off-hand manner, defendants intimate that the only court which would have jurisdiction to order the granting of a renewal was the probate court in which the estate of Ellen G. Swall was being probated. No authority is given for this statement, and none could be given. The right to a renewal which accrued prior to the death of Mrs. Swall is not the type of claim which must be presented under section 709 of the Probate Code. See *Wright* v. *Superior*

*Court,* 85 Cal.App.2d 151 [192 P.2d 511] (an action brought to prohibit the prosecution of this action in the trial court upon the ground that no claim had been filed in the Swall estate).

## AGENCY

Defendants contend that the evidence does not support the court's finding of ostensible agency in Wright. Plaintiff was told by Mr. Swall that Wright had full authority if she wanted anything. Whenever she had anything to do concerning the property she saw Wright. Wright told plaintiff to pay the rent to Mrs. McPheeters. When plaintiff in 1936 asked Mrs. McPheeters to permit the rent to remain at the then figure, she stated she would talk to Wright. It was Wright who informed plaintiff that the lower rental would be acceptable. Wright informed plaintiff in 1944 that Mrs. Swall was ill and could not be disturbed. He took the renewal notices from plaintiff and said he would give one to Mrs. Swall. He thereafter stated that he had done so. The circumstances show an ostensible agency in Wright, and they also show that Mrs. Swall received the notice. When plaintiff's lawyer spoke to Wright about the renewal, he was referred to defendants' attorney, who also stated that Mrs. Swall was too ill to be disturbed, but he would talk about the renewal later. The lease provided that the notice to renew might be served upon the lessors or their agents or attorneys. *Bard* v. *Kent,* 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032], is not in point. There the lessor died before the tenant attempted to exercise his option. Here, Mrs. Swall was alive, not only at the time of the exercise of the option, but at the time of suit.

## PARTIES

This action was commenced against Mrs. Swall shortly before her death. Later the executrices of her estate were substituted as defendants. Still later these executrices were added in their individual capacities. They as individuals filed a disclaimer in which they stated that they claimed no interest in the property involved except as beneficiaries under Mrs. Swall's will ''under which the said property is not specifically devised to us as individual owners, but only as trustees, and further point out that said real property is not specifically mentioned in said will, but forms a part of the general assets of the estate.'' Just what these qualifications in the disclaimer mean is difficult to understand. In view of this, and a statement in plaintiff's Exhibit 8 to the effect that

the individual defendants had received a gift deed to the property from Mrs. Swall in her lifetime, the court properly included them in the judgment.

## FINDINGS

While the findings are by no means models, they sufficiently cover the matters which defendants contend were not found. They are not specific. They find that the designated paragraphs of the second amended complaint and the amendment thereto are true and that the denials in certain paragraphs and the allegations in other paragraphs of the answer are untrue. Plaintiff alleged and the finding found that defendants individually and as executrices "claim" the ownership of the leased property. This is a sufficient finding of ownership for the purposes of this action.

The court did not directly find on the allegations of the cross-complaint. However, its findings on the allegations of the second amended complaint and amendment thereto, the denials and affirmative allegations of the answer, constitute a negation of the allegations of the cross-complaint.

## RENEWAL NOTICE

Defendants contend that the notice to renew was not sufficient because it gave notice of plaintiff's *intention* to exercise her option to renew. It further requested a meeting to determine the rental or to arrange for arbitration. It was a sufficient notice under the terms of the lease. Nor does the fact that Mrs. Swall died after being notified, change the situation any. Plaintiff's right to renew was complete as soon as she complied with the terms of the lease. The death of Mrs. Swall thereafter did not cause plaintiff's right to renew to lapse. *McDonald* v. *McElroy*, 60 Cal. 484, relied upon by defendants, is not in point, as it dealt with rights which did not arise until after the death of the deceased.

## RELIEF GRANTED

In its judgment the court ordered defendants to enter into a new lease under substantially the same terms as the old lease, except that it fixed the rental at $50 per month. It took no evidence upon the subject, evidently basing the amount on testimony of plaintiff that during negotiations for settlement of the controversy defendants had offered to accept that rental. The court had no power to fix a rental without taking evidence. The real question here is whether the court should have taken evidence upon the subject or given the parties an op-

portunity to determine the matter by arbitration as set forth in the lease. In determining that question it is important to consider the complaint. This was an action for declaratory relief. The amended complaint set up that a dispute had arisen between the parties with reference to their rights, duties and obligations under the lease, as to the provision calling for arbitration in case the parties could not agree on the rental, and as to whether plaintiff had breached it, and asked the court to declare that plaintiff had not breached the lease in any manner, that it was still in force, to declare the rights of the lessor and lessee in the real property under the lease, ''decreeing and determining a fair rental'' and requiring the lessor to execute ''a renewal of said lease for a rental as determined by said arbitration'' etc. Thus, it will be seen that what the plaintiff asked for primarily was a declaration of her rights and a renewal of the lease for a ''rental as determined by said arbitration.'' While, in a sense, defendants refused to appoint an arbitrator as provided in the lease, their refusal was based upon their contention that no lease existed by which plaintiff was entitled to a renewal, plaintiff holding, as they claimed, only under a month to month tenancy, and also, if the lease existed, it had been so breached that plaintiff was not entitled to a renewal. Under the circumstances of this case, when the court declared that plaintiff was entitled to a renewal, it should have given the parties an opportunity to proceed under the provisions of the lease and appoint arbitrators. That this is the proper procedure is shown by section 1284 of the Code of Civil Procedure which provides: ''If any suit or proceeding be brought upon any issue arising out of an agreement providing for the arbitration thereof, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall stay the action until an arbitration has been had in accordance with the terms of the agreement; provided, that the applicant for the stay is not in default in proceeding with such arbitration.'' *Minton* v. *Mitchell*, 89 Cal.App. 361 [265 P. 271], was a definite refusal of arbitration and was not an action for declaratory relief. Moreover, the theory of the court (which theory is no longer the law) was that the courts would not enforce an agreement to arbitrate, and notwithstanding such agreement, the courts would determine all disputes between the parties. The cases cited by plaintiff on this point from other jurisdictions as well as California do not apply. They, too, hold that the courts will not enforce

agreements to arbitrate. ▬ However, since 1927, when title X, sections 1280 et seq., were added to the Code of Civil Procedure, it is the settled policy in this state that the courts will and do recognize and enforce written agreements to arbitrate. (See Witkin, *Summary of California Law*, vol. 2 (6th ed.), pp. 1475-6.) Moreover, even prior to the enactment of sections 1280 et seq., the California courts enforced agreements. which provided for " 'A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property and the like. . . .' " (*Bewick* v. *Mecham*, 26 Cal.2d 92 [156 P.2d 757, 157 A.L.R. 1277]. See, also, *Rives-Strong Bldg., Inc.* v. *Bank of America*, 50 Cal.App.2d 810 [123 P.2d 942].)

▬ The judgment is reversed and the cause remanded with instructions to the trial court to afford the parties an opportunity to submit the question of rental to arbitration as provided in the lease. In the event of the failure or refusal of defendants to submit to arbitration, then the court shall take evidence of the reasonable value of the rental. Upon determination of the rental value, the court shall order judgment for a renewal in accordance with the views here expressed. Plaintiff is entitled to recover costs.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 2, 1950. Schauer, J., voted for a hearing.