## RENO REALTY AND INVESTMENT CO., a Corpo-RATION, Appellant, v. JOSEPH HORNSTEIN, Respondent.

No. 3926

July 16, 1956.                              301 P.2d 1051.

*Springmeyer & Thompson,* of Reno, for Appellant.

*Sinai & Sinai,* of Reno, for Respondent.

## OPINION

By the Court, MERRILL, C. J.:

This is an action for declaratory relief brought by appellant-lessor to establish his right to refuse to extend the term of respondent's lease. The trial court, sitting without jury, held for the lessee, and lessor has taken this appeal.

The premises are located in the city of Reno. The lease was executed in 1950 for a term of five years from January, 1951. The lessee was granted the right to extend the term for an additional five years "in consideration for the full, faithful, and complete performance by lessee of each, every and all of the terms and provisions of this lease agreement by said lessee to be kept and performed."

Among the lease provisions was the following: "Lessee further agrees that he will not violate nor permit any person to violate any city ordinance of the city of Reno or any county, state or federal law on the said premises whereby said premises may or might be subject to abatement nor to conduct on said premises any business which is forbidden or prohibited by the ordinances of the city of Reno or prohibited by the laws of the state of Nevada or the United States of America."

Upon the premises lessee, under the name of Nevada Turf Club, conducted a gambling business in the course

of which he took bets on horse races and other sports events. The business was licensed and regulated under the authority of the Nevada Gambling Control Act, NCL 1931–1941 Supp., Secs. 3302 et seq., and under the supervision of the Nevada Tax Commission.

In 1952 the tax commission adopted a regulation governing the conduct of such gambling transactions which provided in part, "All bets accepted by race horse books or sports pools must be on an over-the-counter basis * * *. No bets shall be placed by telephone, telegraph, messenger or in any manner other than over the counter by the person making the bet."

During October, November and December, 1954, an investigator of the Nevada Tax Commission under an assumed name, from San Francisco, engaged in an interstate course of betting on football pools with the Nevada Turf Club contrary to regulation. On six occasions by mail he received from the club cards by means of which bets could be placed. On six occasions he placed bets by money order through the mail, which sums were duly deposited by the Nevada Turf Club in its Reno bank account. On two occasions successful bets were paid by the Nevada Turf Club by money order through the mail. It does not appear that any bets offered by the investigator were rejected by the club.

Lessor became aware of the tax commission investigation through a news article published in February, 1955. Later that month lessee voluntarily abandoned his gambling license and confined himself to a bar business. No further proceedings were taken by the tax commission. This action was brought the following month. In the interim, rent for March, 1955 had been accepted by the lessor. Lessor by its action did not seek forfeiture of the lease for its remaining eight months but sought to establish its right to refuse to renew the lease for the extended five-year term upon the ground that lessee had failed to make full, faithful and complete performance of the lease provisions.

The trial court decreed that lessee's right to renew the lease had not been lost. Upon three grounds lessee supports the trial court's action.

First. The trial court in its conclusions of law held that the unlawful acts were "trivial, technical, and in no way prejudicial to plaintiff or to said demised premises." Lessee contends that those acts may not, therefore, be asserted to demonstrate lack of full and faithful performance. Without deciding the point, we may concede that lessee's position would be well taken were the court's holding to be permitted to stand. In Title Insurance and Guarantee Co. v. Hart, 9 C.C.A., 160 F.2d 961, 969, 970, the court, in holding certain violations to be "relatively minor infractions," stated, "It is not reasonable in human experience to expect that there could have been full, exact, strict, complete and perfect compliance with all of the covenants * * *. At certain times due to the impossibility of human perfection some of the Mine Safety Orders were bound to be violated." Realistically it may be the fact that isolated and technical instances of violation of the regulations of the tax commission can hardly be avoided in an operation of any magnitude. Such was not the case here. While the proof of violation was through a very few improper transactions as against many thousands of unexamined and unquestioned transactions, still those few were sufficient to establish beyond coincidence that the establishment was actually engaged in an unlawful operation. Had lessee not voluntarily surrendered his gaming license on the premises abatement may well have resulted.

Lessee contends that the tax commission has itself demonstrated that it regarded the incident as trivial. It did not proceed further against the lessee. Instead it has granted him a gaming license at another location and thus appears to have placed its stamp of approval upon him. We have no way of knowing the considerations which moved the tax commission in taking its

action or of judging the significance of such action, and do not propose to speculate upon such matters. With due regard to the public interest we cannot hold as law that operation contrary to such a regulation as the one here involved is but a trivial or technical violation. Without a more unequivocal expression of intent we are not willing to construe the action of the tax commission as a ruling to that effect. Under the proof the court's conclusion that the violation was trivial and technical must be held to be error. The violation amounted to a substantial breach of the lease.

Second. The court found (and apparently regarded as significant) that lessee had not personally committed the acts which constituted breach of the lease and had no actual knowledge of their commission. Lessee contends that this establishes as matter of law that he was not guilty of breach.

This might well be the case had the unlawful acts been committed by a stranger: one for whose conduct, unknown to lessee, he was not responsible. Here the acts could only have been committed by someone in authority on behalf of and for the benefit of the lessee's business operation. Lessee testified that four persons were authorized to open mail and two or three were authorized to make bank deposits. At least one was apparently authorized to purchase money orders for the payment of bets. One may not entrust to others the operation of his business and the fulfillment of his contractual obligations without accepting civil responsibility for their acts in his behalf. Lessee cannot escape responsibility for breach of lease by a simple denial of actual personal knowledge that such breach had been committed by those for whose conduct he was answerable.

Third. The trial court concluded that any right of refusal to extend the term of the lease had been waived by appellant by the acceptance of rent after knowledge

of the breach. Acceptance of rent after knowledge of breach is well recognized to constitute a waiver of the lessor's right to terminate the lease. Sharp v. Twin Lakes Corporation, 71 Nev. 162, 283 P.2d 611. Where the lease grants an unconditional right to the lessee at his election to renew the lease upon completion of its original term, such a waiver attaches to the extended term. The right of renewal is regarded as part of the term of the lease itself. Kaliterna v. Wright, 94 Cal.App. 2d 926, 212 P.2d 32; Saxeney v. Panis, 239 Mass. 207, 131 N.E. 331; Hotel Allen Company v. Allen's Estate, 117 Minn. 333, 135 N.W. 812; Selden v. Camp, 95 Va. 527, 28 S.E. 877; Henry v. Bruhn & Henry, 114 Wash. 180, 195 P. 20.

However, the situation is different where the right to renew the lease is expressly made subject to the condition precedent that the lessee shall have performed all the terms of the lease. As stated by Kay, J., in Bastin v. Bidwell, 18 Ch. Div. 238, 249, "Supposing there was a waiver of the right of re-entry, it does not seem to me at all to follow that the precedent condition would be waived or affected in the least degree. The condition precedent is this: If you have performed your covenants altogether, then, that being the precedent condition, you shall be entitled to have the renewed lease; if you have not performed your covenants it does not matter that the lessor may have waived his right of forfeiting the lease; the condition precedent has not been performed, and if the precedent condition has not been performed, the right which depends upon it does not arise at all."

This distinction was expressly recognized in Saxeney v. Panis, supra, and has resulted in holdings for the lessor against waiver in Gadsden Bowling Center v. Frank, 249 Ala. 435, 31 S.2d 648, 172 A.L.R. 1430; and Jones v. Epstein, 134 Ark. 505, 204 S.W. 217. See also Swift v. Occidental Mining & Petroleum Company, 141 Cal. 161, 74 P. 700; Skillman v. Lynch, 74 S.D. 212, 50 N.W. 2d 641.

The conditions precedent may themselves be waived by the lessor or he may by his conduct become estopped to assert them. Thus we frequently find cases holding a lease subject to renewal where the strict performance of acts required by the lease has itself been waived by acceptance of lesser performance, Garnhart v. Finney, 40 Mo. 449, 93 Am.Dec. 303; Montant v. Moore, 135 App.Div. 334, 120 N.Y. Supp. 556; Spotts v. Westlake Garage Co., 116 Wash. 255, 199 P. 294; Kaliterna v. Wright, supra; or of tardy performance, Seldon v. Camp, supra; Lyons v. Osborn, 45 Kans. 650, 26 P. 31; or by acquiescence of the lessor in the breach over a substantial period of the lease term, Armstrong v. Shapiro, 119 Misc. 522, 196 N.Y. Supp. 630, (reversed on other grounds, 207 App. Div. 304, 202 N.Y. Supp. 305); King-Blair Co. v. Schloss, 253 Mich. 243, 234 N.W. 481; or by permitting substantial investment by the lessee in reliance upon such acquiescence, see Title Insurance & Guaranty Company v. Hart, supra.

However, the distinction must be observed between a waiver of the right to terminate the lease and a waiver of the conditions precedent to the lessee's right of renewal. A waiver is the intentional relinquishment of a known right. Santino v. Glens Falls Insurance Company, 54 Nev. 127, 139, 9 P.2d 1,000. If intention is to be implied from conduct, the conduct should speak the intention clearly. Acceptance of rent clearly speaks an intent not to terminate a lease. Finch v. Underwood, 2 Ch.Div. 310, 316, is one of the earliest cases dealing with the distinction between waivers with which we are concerned. There Mellish, L. J., points out that the waiver of the right to terminate the lease resulting from acceptance of rent is based upon the proposition that "having received rent after notice of it [the lessor] is precluded from taking advantage of the forfeiture because it is a contradiction in terms to treat a man as a tenant and then treat him as a trespasser." This court in Sharp v. Twin Lakes Corporation, supra, stated, "[The lessor's] conduct was consistent only with an

election to hold the lessee to its obligations under the lease. Clearly he has by acceptance of rentals under these circumstances affirmed the existence of the lease and recognized the lessee as his tenant. His right to claim forfeiture has thus been waived."

Likewise the clear acceptance of or acquiescence in performance speaks the intention to accept or acquiesce and thus release from any obligation to perform more fully. But it cannot be said that acceptance of rentals or other performance speaks any intent to release a lessee from an unrelated promise or condition. As stated in Swift v. Occidental Mining & Petroleum Company, supra, "the neglect of the landlord to strictly enforce his right of forfeiture for breach of condition does not entitle the tenant to a renewal when such renewal is dependent upon faithful performance of conditions. There is no finding and no evidence to warrant a finding that plaintiffs consented to any cessation of the work of exploration and development and their mere failure to enforce a forfeiture for the cessation which occurred in 1894–1895 and 1898–1899 was not a waiver of performance of the conditions upon which they had bound themselves to renew the lease."

In the case at bar the right of renewal was expressly made subject to the condition precedent of "the full, faithful, and complete performance by lessee of each, every and all of the terms and provisions" of the lease. Considering the lease provisions, this is equivalent to an express condition precedent that lessee's business enterprise be lawfully conducted. In absence of acquiescence, acceptance of rent cannot be said to amount to a waiver of such a condition.

Lessee contends that here there was acquiescence. He points out that no steps were taken by lessor in protest against the unlawful acts until those acts had ceased and lessee voluntarily had abandoned his gaming license. This cannot be said to constitute acquiescence. Lessor never, by word or action, with knowledge that the acts were being carried on, consented to them. The most that

might be said is that, upon learning of the unlawful acts, it refrained from enforcing its rights to the fullest in that it did not enforce forfeiture. In the absence of reliance and change of position on the part of the lessee such leniency on the part of the lessor cannot be said to constitute waiver of performance.

Lessee contends that there was change of position. The trial court found that lessor, with knowledge of the breach, "caused defendant [lessee] to expend large sums of money in the improvement of said premises * * * in reliance upon defendant's belief that plaintiff recognized defendant's right to extend said lease." The record does not support this finding. The improvements were made during the term of an earlier lease and were not made in reliance upon the fact that lessor apparently was willing to overlook lessee's violation.

Lessee emphasizes that at the time lessor asserted its right to deny a renewal of lease everything was operating properly; no one had suffered by any lease violation; order was fully restored and the tax commission apparently satisfied. The breach, he asserts, was simply water over the dam to no one's detriment. However, it is not for us to judge the desirability of the lessee as tenant for a renewed term in the light of his past history as tenant. Under the facts of this case that right is one expressly and specifically reserved to the lessor by virtue of contract. We may not question the manner in which it chooses to exercise such right, nor inquire as to its true motive in such rightful exercise.

Reversed and remanded with instructions that judgment in accordance with this opinion be entered for the plaintiff.

EATHER, J., concurs.

(BADT, J., participated in the deliberations and concurs in the result, but was absent at the time of filing of the opinion.)