Filed 2/28/22  OS Pacific v. Trio Pasadena CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| OS PACIFIC, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TRIO PASADENA, LLC,<br><br>    Defendant and Respondent. | B305601 c/w B308346<br><br>(Los Angeles County<br>Super. Ct. No. 19GDCV00317) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed as modified.

Mohajerian and Al Mohajerian and Ann Anooshian for Plaintiff and Appellant.

Hamburg, Karic, Edwards & Martin and Gregg A. Martin and Ann S. Lee for Defendant and Respondent.

———————————————

OS Pacific, LLC (tenant) appeals from a judgment in favor of Trio Pasadena, LLC (landlord) involving the renewal of a commercial lease. In a separate appeal, tenant challenges the posttrial award of attorney fees and costs to landlord. We consolidated the two appeals for argument and decision. We modify the costs award by taxing the fees for landlord's expert witness but otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, the predecessors to landlord and tenant entered into a lease to operate a Roy's restaurant in a mixed-use building in Pasadena. At the time the lease was signed, the buildout of the restaurant was not yet completed so the lease contained blank spaces for certain dates. These blank spaces would become relevant as facts would unfold. On December 12, 2008, construction now completed, the parties entered into a Term Commencement and Expiration Agreement which included the missing dates: the initial term of the lease commenced on May 10, 2008 – when the tenant was required to begin paying rent – and expired on May 31, 2018, unless by September 3, 2017, tenant exercised the first of two, five-year renewal options.

In 2013, tenant took over the lease as part of its purchase of over 20 Roy's restaurants.[1] In 2016, landlord purchased the property. As part of the transaction, the lease was transferred to landlord. Although notice was given to residential tenants of the sale of the property, it is unclear whether notice was also given to the commercial tenants.

---

[1] The lease was assigned several times between 2007 and 2013 to different entities operating the Roy's restaurant in the building. These assignments are not relevant to our discussion.

1.    ***The Relevant Lease Terms***

The lease provided for an initial term of 10 years and two consecutive renewal terms of five years each.  To trigger the first renewal, tenant was required to notify landlord in writing by September 3, 2017, of its intent to exercise the option.  The lease provision for the renewal options and a forfeiture savings clause (italics added) follow:

**"Renewal Options.**  Tenant shall have the option to renew this Lease for two (2) consecutive renewal terms (each a "Renewal Term") of five (5) years each, commencing on the first day following the expiration of the Initial Term or the then current Renewal Term, subject to the terms and conditions set forth herein.  If Tenant is not in default beyond the expiration of any applicable cure period of a monetary covenant or a material non-monetary covenant under this Lease, Tenant may renew this Lease as provided above upon giving Landlord written notice of such renewal not less than two hundred seventy (270) days and not more than eighteen (18) months prior to the expiration of the then current Term.  *It is the intention of the parties to avoid forfeiture of Tenant's right to extend the Term of this Lease under any of the options set forth in this Section through inadvertent failure to give notice of exercise thereof within the time limits prescribed.  Accordingly, if Tenant should fail to give notice to Landlord of Tenant's election to extend the Term of this Lease for any of the aforesaid Renewal Terms on or before the date such notice was due, Tenant shall not be deemed to forfeit its right to renew if Tenant can provide reasonably satisfactory evidence to Landlord that Tenant's failure to exercise such Renewal Term within the required time frame was the result of an administrative error or oversight.*"

If tenant failed to renew the lease, the following "holding over" provision applied upon expiration of the initial term.

"**HOLDING OVER.**  This Lease and the term created by this Lease shall cease and terminate at the end of the Initial Term hereof, unless extended as provided herein, without the necessity of notice, and Tenant hereby waives notice and agrees that Landlord shall be entitled to summary recovery of the Premises.

"Any holding over after the expiration of the Term hereof, without the written consent of Landlord, shall be construed to create a tenancy at will, under all the terms, covenants and conditions of this Lease, except Landlord shall be entitled to collect rental [*sic*] in the amount of one hundred fifty percent (150 [percent]) of Base Rent, together with Additional Rent and Percentage Rent due hereunder.  Any holding over after the Term hereof with the consent of Landlord, shall be construed to create tenancy from month to month at the Base Rent and Additional Rent in effect for the last month of the Term and under all the other terms, covenants and conditions of this Lease."

## 2.    *Tenant Attempts to Renew*

On September 1, 2017 – two days before the expiration of the first renewal option deadline – tenant's consultant contacted landlord's property manager to arrange a meeting to discuss the renewal of the lease and tenant improvements.  Landlord scheduled the meeting for September 7, 2017, a date that was after the option deadline.  At this meeting, landlord informed tenant's consultant that the September 3d deadline to exercise the option to renew had passed.  According to landlord, tenant's consultant stated he was unaware of the September 3d deadline, and he would need to "go back and check."

At trial, tenant's consultant would testify he attended the meeting believing the deadline to renew was October 3, 2017. Previously, tenant had provided him with a copy of the lease, which contained no dates, and a lease abstract, which listed an October 3d deadline. According to the consultant, at the meeting he informed landlord he had relied on the lease abstract. The consultant did not show landlord a copy of the abstract at the meeting. A copy of the 13-page lease abstract was admitted into evidence at trial. The October 3d deadline is shown on page 9 with no particular emphasis in typeface such as bold or italics.

After the September 7th meeting had concluded, tenant's general counsel read the lease and confirmed for herself tenant had missed the deadline.[2] At trial, general counsel would testify she forwarded the lease abstract to tenant's consultant and relied on it herself. She believed the lease abstract was prepared by the real estate department of tenant's parent company.[3]

---

[2] Although we identify the attorney as tenant's general counsel, she actually worked for a company that provided management services, including legal, accounting, and human resources, to tenant and others.

[3] There was evidence at trial that the lease abstract may have been prepared for tenant's parent company by a third-party vendor, Accruent, Inc. Admitted into evidence was a letter tenant had sent to Accruent, Inc. on December 31, 2018, advising Accruent, Inc. of the mistake on the lease abstract and stating tenant was holding Accruent Inc. responsible for any damages resulting from this error. General counsel also indicated in a May 24, 2018, letter that the lease abstract came as part of the documentation provided by the seller of the 20 Roy's restaurants. In any case, it is undisputed neither tenant nor landlord created the lease abstract.

Also on the same day, general counsel mailed landlord a letter that stated: "As you know, the Initial Term of the above-referenced Lease currently expires on May 31, 2018. Pursuant to Article 1.3.C, Tenant has two (2) Renewal Options of five (5) years each. [¶] This letter constitutes Tenant's written notice to Landlord exercising the first five (5) year Renewal Option. The new expiration date for the Lease shall be May 31, 2023. [¶] If you have any questions or concerns regarding this notice, please contact the undersigned."

The letter did not acknowledge the renewal was untimely or indicate the delay was a result of administrative error or oversight. Nor did the letter include any explanation of the facts leading up to, or supporting, the error or oversight. General counsel would explain at trial she drafted the letter with the understanding the time to renew had passed but she believed tenant's consultant had advised landlord at the September 7, 2017 meeting about the error involving the lease abstract.

By letter dated September 13, 2017, landlord rejected tenant's attempt to renew, stating its position was that the lease would expire on May 31, 2018. Landlord also advised tenant it planned to market and solicit offers after May 31. Tenant was invited to submit its own offer. This letter was mailed not to tenant directly, but to its former parent company in Tampa, Florida as well as to tenant's contractual guarantor.[4]

---

[4] By this time, tenant had been acquired by a new parent company and was a wholly-owned subsidiary of United Ohana, LLC. Tenant's previous parent was OSI Restaurant Partners. The landlord's September 13, 2017, letter was erroneously sent to OSI Restaurant Partners as well as to Roy's Holdings, Inc., the guarantor on the lease. OSI Restaurant Partners also served as

6

General counsel would testify that, because tenant did not receive, and was unaware of, landlord's rejection letter, tenant made plans to "refresh" the restaurant because it believed it had properly renewed the lease.  In internal emails in January 2018, landlord and its property manager discussed tenant's plan to make improvements to the premises.  Landlord expressed confusion as to why tenant would make these plans without a lease extension in place.

By April 6, 2018, landlord had advised tenant's general counsel personally of the September 13, 2017, letter that rejected tenant's attempt to renew and had forwarded a copy to her.  Around mid-April of 2018, general counsel explained to landlord's attorney the situation regarding the lease abstract from her client's perspective.  The attorney dismissed tenant's attempt to renew the lease and said landlord "didn't care why it was late, that it was late. . . ."  On May 7, 2018, tenant's director of real estate told landlord he believed tenant had validly exercised its renewal option.

In letters sent in April and May 2018, the parties continued to dispute whether the lease would end on May 31, 2018.  In its correspondence with landlord, tenant did not specify it was relying on the savings clause to renew the lease.  Nor did tenant provide evidence of the administrative error or oversight – the erroneous lease abstract.  At trial, general counsel would testify she spoke to landlord's property manager and attorney about the circumstances surrounding the renewal attempt, including the mistake in the lease abstract, but did not provide the lease abstract because "they hadn't requested that."  She continued to

guarantor.  General counsel testified she did not receive this letter and was unaware of its contents until April 2018, some six months after the letter's date.

believe she did not need to include facts regarding the lease abstract in correspondence because it had been explained orally to landlord's representatives.

On May 24, 2018, one week before the lease expired, tenant, for the first time, set forth in a writing that it intended to renew under the savings clause, quoted from the clause, stated the reasons for its untimely renewal, and enclosed the lease abstract. The next day, landlord rejected tenant's explanation for the untimely exercise of the renewal option. After May 31, 2018, tenant continued to pay rent in the base amount. It did not pay the holdover rent, which was 150 percent of the base rent. On December 21, 2018, landlord served tenant with a 10-day notice to pay rent or quit, although no unlawful detainer action was filed around that time.

### 3.    *The Lawsuits*

On March 12, 2019, tenant filed its own lawsuit against landlord for breach of contract and declaratory relief. In the breach of contract cause of action, tenant alleged that landlord had breached the covenant of quiet enjoyment by disrupting tenant's business when it posted eviction notices and showed the property to prospective tenants.[5] Tenant also sought declaratory

---

[5]    The trial court granted landlord's motion to strike the breach of contract/quiet enjoyment cause of action under the strategic lawsuits against public participation or anti-SLAPP statute. (Code Civ. Proc., § 425.16.) Tenant argues the court's dismissal of its breach of contract cause of action was "in error and an abuse of discretion" but provides this court with no analysis or citation to legal authority. Tenant does not discuss the anti-SLAPP ruling at all. Tenant forfeits its argument on this point. (*Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521 [failure to present reasoned argument constitutes forfeiture] (*Sviridov*).)

relief to determine whether it had validly exercised the renewal option and to discover the identity of the true owner of the property. Tenant claimed it had never received notice of the transfer of ownership as required under the lease.

Two days later, landlord filed its unlawful detainer complaint, seeking restitution of the premises, forfeiture of the lease, and unpaid holdover rent calculated at 150 percent of the base rent. The cases were consolidated for bench trial.

At trial, the parties presented the evidence we have described. Tenant offered expert testimony that lease abstracts were commonplace in commercial real estate transactions. Its expert testified that tenant, as the buyer of 20 Roy's restaurants from a sophisticated seller, would be more inclined to rely on a lease abstract than any document provided by the seller.

Tenant argued the intent of the parties as expressed in the savings clause governed whether it had validly exercised the renewal option. According to tenant, the savings clause contained no deadline for invoking the clause, which was triggered only after there was a "deemed forfeiture." By that, tenant meant landlord was required to reject the renewal notice before tenant was required to invoke the savings clause. Tenant claimed the landlord's September 13, 2017, rejection letter did not trigger the obligation to invoke the savings clause because tenant had not received the letter, it having been sent to the wrong entity. Tenant first heard about the letter in mid-April 2018. By that time, tenant had made various improvements to the space and claimed it had detrimentally relied on landlord's failure to reject tenant's renewal of the lease.

Tenant also argued any failure to renew was excused by landlord's breach of the lease by failing to notify tenant of the sale of the property and assignment of the lease.

9

Landlord's theory at trial was that tenant's failure to read the actual lease and reliance on a lease abstract prepared for tenant's parent company by a third party was objectively unreasonable. Tenant failed to demonstrate its untimely renewal was the result of an "administrative error or oversight." Landlord presented expert testimony that it was contrary to custom and practice in the industry to rely on a lease abstract prepared by a third party and that a party to a lease must look at the actual lease to be certain of its obligations.

Landlord posited that tenant failed to timely renew the lease because it sought to receive tenant improvement concessions from landlord and because tenant was required to, but had not yet, received permission from the guarantor (its former parent company) for renewal. Landlord presented evidence that the guarantor sued tenant in Florida because tenant renewed other leases without prior approval.

The trial court found in landlord's favor. As to that part of its declaratory relief cause of action to discover the identity of the true owner of the property, the court found the evidence established landlord was in fact the landlord of the property and that tenant had conceded as much in its trial brief. Tenant does not challenge this determination on appeal.

As to the part of its declaratory relief claim to determine whether tenant had validly exercised the renewal option, the court found tenant's September 7, 2017, letter did not timely renew the lease, as it was four days past the September 3, 2017, renewal deadline. It found tenant's detrimental reliance argument to be unavailing because the evidence showed most of the tenant improvements were made in or after April 2018, when it was undisputed tenant knew landlord had rejected its renewal attempt. The trial court reasoned, "The timing of such

10

expenditures for improvements to the Premises is less consistent with a mistaken belief that the September 7, 2017 renewal notice was effective than it is with an attempt to bolster [tenant's] detrimental reliance litigation position after having learned through means it could not ignore in April and May 2018 that [landlord] did not consider the option validly exercised . . . ."

The court also found tenant failed to renew under the savings clause. The court framed the issue the way the parties had presented the argument: "[T]he proper analysis is whether it was objectively reasonable for [landlord] to determine that [tenant] had not provided reasonably satisfactory evidence of administrative error or oversight in connection with its untimely renewal." The court concluded that landlord did not breach the lease by failing to honor the savings clause. The court's ruling described the chronology of events beginning in September 2017, and referenced repeated instances when tenant failed to invoke the savings clause or provide evidence of administrative error or oversight.[6]

The court found untimely tenant's May 24, 2018, renewal letter which, for the first time, cited to the savings clause and provided a copy of the lease abstract. The court explained, "Although the Lease does not explicitly provide a time frame by which the tenant must provide evidence under the savings

---

[6] For tenant to successfully invoke the savings clause, tenant was required to provide "reasonably satisfactory evidence to Landlord that Tenant's failure to exercise such Renewal Terms within the required time frame was the result of an administrative error or oversight." The court focused on the word "evidence," and expressly found that tenant's letters of September 7, 2017, April 6, 2018 and May 11, 2018 did not provide any evidence of claimed administrative oversight or error.

clause, the Court finds it was reasonable to conclude [tenant] did not comply with the savings clause. Here, [tenant] made no attempt to satisfy the requirements of the savings clause until one week prior to the expiration of the Lease. Such delay was unreasonable, rendering [tenant's] May 24, 2018 attempt non-compliant. (See Civ. Code, § 1657 ['If no time is specified for the performance of an act required to be performed, a reasonable time is allowed'].)" The court found persuasive testimony from the attorney for the original landlord that he had negotiated a 270-day advance notice requirement for renewal of the lease to ensure his client had sufficient time to market the space.

As an alternative ground, the court concluded tenant's untimely renewal was not the result of administrative error or oversight. It found tenant's reliance on the lease abstract was not reasonable in light of the custom and practice in the industry and the size of the original transaction, which involved the purchase of 20 Roy's restaurants. The court concluded that landlord had reasonably determined that tenant had failed to provide reasonably satisfactory evidence of administrative error or oversight.

On the unlawful detainer claim, the court found in landlord's favor and awarded holdover rent. It ordered restitution of the premises, forfeiture of the lease, and back rent of $30,349.48 (calculated at the holdover rate of 150 percent of the base rent from June 1, 2018 to December 31, 2018) plus $924.96 per day of occupancy from January 1, 2019 onward. The court also awarded attorney fees and costs to landlord.

Tenant timely filed a notice of appeal from the judgment.

## DISCUSSION

At the outset, we observe that on appeal tenant raises a multitude of arguments that challenge the trial court's findings

12

and rulings. Many of these contentions are unsupported by reasoned argument, legal authority, or record citations and thus violate rule 8.204(a) of the Rules of Court. For example, tenant sets out a point-by-point criticism of the trial court's statement of decision in a 14-page section in its opening brief entitled, "Trial Court's Abuse of Discretion and Errors of Law." Despite this heading, there is not one citation to legal authority in that section, nor a discussion of how the trial court committed "errors of law." This is but one example of tenant's failure to adequately present its arguments on appeal — although it is the most egregious one. We decline to address those issues for which tenant has failed to provide reasoned argument based on relevant authority. We consider these arguments to be forfeited.[7] (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

With that caveat, we address tenant's arguments that adequately challenge: (1) the trial court's finding that tenant's

---

[7]    Along the same vein, landlord faults tenant for failing to fairly state the evidence. "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) Tenant's failure, landlord argues, means tenant's substantial evidence argument is waived. (*Ibid.*) Tenant fails to address this point in its reply brief. While we agree tenant omitted certain unfavorable evidence, such as testimony by the attorney for the original landlord about its rejection of renewal notices, we decline to affirm the judgment on this basis.

attempts to exercise the renewal option were untimely and failed to provide reasonably satisfactory evidence of administrative error or oversight; (2) the trial court's award of holdover rent in the unlawful detainer action; and (3) the attorney fees and costs award to landlord.

## 1. *Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.] [¶] A single witness's testimony may constitute substantial evidence to support a finding. [Citation.] It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. [Citation.] 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.] Specifically, '[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.' [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

"When an appellant challenges a trial court's interpretation of a written contract, the substantial evidence standard of review applies when the contract is ambiguous and conflicting extrinsic evidence is admitted to assist the court in interpreting the contract. [Citation]. However, if interpretation of the contract does not turn on the credibility of conflicting extrinsic evidence, the trial court's interpretation of the contract is a question of law

14

we review de novo, or independently." (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1110–1111.)

## 2. *The Renewal Option Was Not Exercised*

Tenant challenges the trial court's determination that it failed to validly renew the lease. Although tenant acknowledges its attempt to renew was untimely, tenant posits two grounds for its effective renewal. First, tenant contends its breach was "minor" and may be excused, and landlord's own material breach of the lease discharged tenant from its duty to perform. For its second ground, tenant relies on the savings clause and argues the parties' intent as expressed in the clause's first sentence is paramount: "It is the intention of the parties to avoid forfeiture of [t]enant's right to extend the Term of this Lease under any of the options set forth in this [s]ection through inadvertent failure to give notice of exercise, thereof, within the time limits prescribed." (Emphasis omitted.) With that provision at the fore, tenant asserts the savings clause must be interpreted broadly, and any uncertainties must be resolved in its favor.

We first consider whether the untimely renewal was excused by landlord's conduct and then address tenant's reliance on the savings clause.

### A. Tenant's Attempt to Renew Was Untimely and Not Excused

Tenant concedes its initial attempt to renew the lease by letter dated September 7, 2017, was late. Tenant did not comply with the express terms of the renewal option — that is, tenant did not provide written notice of its intent to renew by September 3, 2017. We state the general principle that applies to this setting: "courts are strict in holding an optionee to exact compliance with the terms of the option." (*Hayward Lumber &*

15

*Inv. Co. v. Construction Products Corp.* (1953) 117 Cal.App.2d
221, 229; *Bekins Moving & Storage Co. v. Prudential Ins. Co.*
(1985) 176 Cal.App.3d 245, 250; *Jeffrey Kavin, Inc. v. Frye* (2012)
204 Cal.App.4th 35.)

Tenant contends that there are exceptions to this rule, and
this was a "minor breach" the trial court should have excused.
For this, it relies on *Kaliterna v. Wright* (1949) 94 Cal.App.2d
926, disapproved on a different ground by *State Farm Mut. Auto.
Ins. Co. v. Superior Court of San Francisco* (1956) 47 Cal.2d 428,
431 and *Title Ins. & Guaranty Co. v. Hart* (9th Cir. 1947)
160 F.2d 961.  Tenant's reliance is misplaced.  In both *Kaliterna*
and *Hart*, the tenants timely and validly renewed according to
the terms of their leases.  The *Kaliterna* and *Hart* courts held the
tenants were entitled to renew even though *tenants* had
previously breached the lease.  Both courts found that the
respective landlords had waived the minor breaches.  (*Kaliterna,*
at p. 936; *Hart*, at pp. 970–971.)  Neither case involved a tenant's
failure to comply timely with the express terms of a renewal
option.

Tenant also contends landlord's own material breach of the
lease discharges tenant from its duty to timely exercise the
option.  The litany of breaches described by tenant were:  "by
failing to provide required renewal notices, stalling the meeting
until after the September 3, 2017 deadline, or by wrongfully
'rejecting' an in-person production of evidence of 'oversight', or by
wrongfully rejecting a written notice provided the same day as
the meeting <u>wherein [landlord] admitted they intended to have
an entirely new lease and raise rent dramatically.</u>" While tenant
correctly observes that one party's breach may discharge the
second party from its duty to perform (*Brown v. Grimes* (2011)
192 Cal.App.4th 265, 277), tenant has failed to demonstrate

16

landlord breached the lease. Notably, tenant makes factual assertions purporting to support its claim of breach without citation to the record. We parse tenant's claims of breach and address them separately.

*Renewal Notices and Meeting Date.* Tenant repeatedly asserts in its appellate briefs that landlord was required to provide renewal notices. By this, we understand that landlord was required to give notice of the impending renewal deadlines. Yet, tenant cites to nothing in the lease that obligates landlord to serve renewal notices, nor does tenant provide other evidentiary support. Perhaps that is because the evidence is to the contrary. The attorney who negotiated the lease for the original landlord testified the first landlord expressly rejected a notice requirement. The trial court could reasonably credit that testimony.

Given that landlord was not responsible for alerting tenant to pending renewal deadlines, it was also not responsible for ensuring that tenant met with landlord's representatives prior to September 3, 2017. The evidence shows tenant asked to meet with landlord and landlord set a date that tenant accepted. The trial court's implied finding that this conduct did not breach the lease is supported by substantial evidence.

*In-Person Offer of Proof.* Nor does tenant provide any evidence to support its argument that landlord rejected an in-person production of the lease abstract. Again, the evidence is to the contrary. Tenant's consultant testified he did not show landlord a copy of the lease abstract. Tenant's general counsel testified she did not provide landlord with the abstract until May 24, 2018, because "they hadn't requested that." As the trial court observed, tenant had plenty of opportunities to provide timely evidence of an administrative error or oversight.

***Rejection of Renewal.*** We do not credit tenant's claim that landlord "wrongfully" rejected the September 7, 2017 notice of renewal. The purported renewal was untimely and landlord was entitled to reject it. Finally, tenant provides no legal or factual support for its assertion that landlord's purported desire for a new lease and higher rent was a breach of the lease.[8]

## B. Substantial Evidence Supports the Trial Court's Findings Regarding the Savings Clause

Tenant argues the savings clause cures any forfeiture of its renewal option. The argument continues: Tenant properly notified landlord of its intent to invoke the savings clause by orally explaining the circumstances of the delay to landlord. And, also that it validly renewed on May 24, 2018, when it quoted the savings clause and provided by letter a copy of the erroneous lease abstract. Tenant argues a plain reading of the savings clause reveals there was no time constraint on invoking the clause and the trial court was not authorized to "write in" one. Tenant also declines to read into the savings clause a written notice requirement.

We need not address tenant's interpretation of the savings clause because we conclude substantial evidence supports the trial court's finding that tenant's reliance on the lease abstract was not objectively reasonable. This evidence also provides the basis for the trial court's finding that tenant failed to provide reasonably satisfactory evidence of the administrative error or oversight required under the lease.

---

[8] We observe tenant asserted in closing argument that its failure to timely renew was also excused by landlord's breach of the lease requiring it to notify tenant of the sale of the property and assignment of the lease. Tenant appears to have abandoned this argument on appeal.

The trial court found tenant, a sophisticated business entity that owned dozens of restaurants, acted unreasonably by relying solely on a lease abstract that it did not prepare. Substantial evidence supports the trial court's finding.

Landlord's expert testified it was contrary to custom and practice in the industry to rely on a lease abstract prepared by a third party and that a party to a lease must look at the actual lease to be certain of its obligations. Tenant's own expert admitted a tenant "on average" should read its lease and should take reasonable precautions to timely exercise an option, including review of the option expiration date. He also testified that the custom and practice of the industry was to create one's own lease abstract, especially for a transaction that included the purchase of 20 restaurants.

The testimony of the opposing experts comports with the rule that "one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." (*Madden v. Kaiser* (1976) 17 Cal.3d 699, 710.) Even if the lease itself failed to specify the dates for renewal, the Term Commencement and Expiration Agreement, which landlord's expert testified was part of the lease, provides the renewal deadline.

Tenant does not dispute the significance of the evidence we have cited. It instead asserts, for the first time, that the savings clause does not require that the administrative error or oversight be reasonable. Tenant now contends the savings clause merely requires the evidence be "reasonably satisfactory." Tenant took the contrary position at trial; it argued to the trial court and presented evidence that it was reasonable for tenant to rely on the lease abstract even though it was prepared by a third party. Tenant may not change its theory on appeal. We need not

19

consider this argument. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316.) In any event, the trial court found landlord acted reasonably when it concluded tenant failed to provide satisfactory evidence of administrative error or oversight. Substantial evidence supports this finding.

3.    ***The Trial Court Correctly Found for Landlord in the Unlawful Detainer Proceeding***

Tenant next challenges the trial court's unlawful detainer judgment in landlord's favor. The trial court found that, because tenant failed to validly renew the lease, tenant was subject to the holdover provision in the lease, which required it to pay 150 percent of the base rent. Tenant does not dispute it paid only the base rent after the lease expired. It instead argues landlord is estopped from recovering damages in its unlawful detainer action because it waived tenant's late renewal by inducing it. In particular, landlord induced the delay by failing to remind tenant of the renewal deadline, setting the meeting for after the deadline had passed, and sending the rejection notice to the wrong address. This argument is essentially a rehash of tenant's assertions that the landlord's conduct was a breach of the lease. We have already rejected this argument, and it is not resuscitated in the unlawful detainer action.

Indeed, *Simons v. Young* (1979) 93 Cal.App.3d 170, 178 (*Simons*), the case relied upon by tenant, supports our conclusion. *Simons* presents substantially the same facts – the tenant there failed to timely renew but had made extensive tenant improvements of which the lessors were aware. (*Id.* at pp. 175–177.) The trial court granted the *Simons* tenant equitable relief from forfeiture and the court of appeal reversed. It found the lessors did not do or say anything to induce the delay even though they knew about the tenant's improvements and his

20

intent to make further additions to the property. (*Id.* at p. 185.) Likewise, landlord here did not do or say anything to induce the delay even though it knew about tenant's improvements. We have already discussed that landlord was not obligated to do any of the things tenant claims would have prevented untimely renewal.

We also reject tenant's contention that landlord may not recover any holdover rent because the holdover provision expired with the lease on May 31, 2018. California courts have enforced similar holdover provisions after the expiration of a commercial lease. (*Constellation-F, LLC v. World Trading 23, Inc*. (2020) 45 Cal.App.5th 22, 26 [150 percent rent increase after commercial lease expired was enforceable]; *Vucinich v. Gordon* (1942) 51 Cal.App.2d 434, 435, 437 [holdover provision containing 500 percent rent increase enforced].)

Relying on the same faulty logic, tenant contends it was entitled to 30 days' notice pursuant to Civil Code sections 789 and 790 because it became a tenant at will upon "termination" of the lease. According to tenant, landlord's 10-day notice to pay rent or quit was insufficient to support the unlawful detainer. As an initial matter, tenant failed to raise this argument below, and it is forfeited. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844.) In any event, landlord complied with Code of Civil Procedure section 1161, subdivision (2), which specifies a tenant that continues in possession without the permission of the landlord after default in the payment of rent is entitled only to three-days' notice.

Finally, tenant argues the holdover rent should not have been calculated from June 1, 2018, since landlord's unlawful detainer action was not filed until March 14, 2019. The holdover provision expressly entitled landlord to holdover rent once the

21

lease expired on May 31, 2018.  The trial court properly calculated the rent owed.

**4.** ***Attorney Fees and Costs Were Properly Awarded***

In the second of the two consolidated appeals, tenant challenges the trial court's award of $651,421.75 in attorney fees. Tenant disputes both landlord's entitlement to fees and the sum awarded.  We set out the fee provision and summarize the posttrial proceedings.  We then address landlord's argument that tenant's attorney fees appeal should be dismissed as untimely before considering the merits of tenant's arguments.  Finally, we address tenant's claim that landlord's expert witness fees were not allowable as costs.

**A.    Attorney Fees Provision**

The lease contained the following attorney fees provision:

"**COSTS OF ENFORCEMENT.**  In the event that Landlord or Tenant shall bring an action to recover any sum due hereunder or for any breach hereunder and shall obtain a judgment in its favor, or in the event that Landlord or Tenant retains an attorney for the purpose of collecting any sum due hereunder or construing or enforcing any of the terms or conditions hereof or protecting their interest in any bankruptcy, receivership, or insolvency proceeding or otherwise against the other, the prevailing party shall be entitled to recover all reasonable costs and expenses incurred, including reasonable attorneys' and legal assistants' fees prior to trial, at trial, and on appeal and for post[]judgment proceedings."

**B.    Proceedings Below**

On March 3, 2020, the trial court entered judgment in landlord's favor and the clerk mailed a notice of entry of judgment to the parties.  The judgment granted attorney fees in the amount of $25,234 to landlord for prevailing on its anti-

SLAPP motion and stated, "Any additional costs and/or attorney fees shall be sought separately and obtained, if at all, by Noticed Motion and/or Memorandum of Costs."

Landlord thereafter filed a memorandum seeking costs in the amount of $32,474.89. Tenant moved to tax costs and landlord filed its opposition. Landlord also filed a motion for attorney fees in the amount of $771,399.75. Tenant opposed, arguing landlord was not entitled to fees and the fees sought were excessive.

After argument, the trial court stated it would adopt its tentative ruling that (1) landlord was the prevailing party and (2) the declaratory relief and unlawful detainer actions sounded in contract rather than tort. Thus, landlord was entitled to attorney fees under the lease's fee provision. The trial court awarded landlord $651,421.75 in fees and $29,009.88 in costs. It reduced landlord's in-house counsel's fees by 40 percent and made a further reduction of $12,214 for fees incurred to address noise complaints associated with tenant's improvements to the restaurant, finding they were not covered by the fee provision.

The trial court directed landlord to give notice and to submit a "proposed order." On July 24, 2020, landlord served tenant with "Defendant's Notice of Ruling" and attached a printout of the tentative ruling. The court clerk converted the tentative ruling into a minute order but did not serve it on the parties.

One month after landlord served tenant with the notice of ruling, the trial court issued an amended judgment that added the attorney fees and costs it had awarded. On August 25, 2020, the clerk mailed a notice of entry of amended judgment to the parties. Tenant appealed from the amended judgment within 60 days.

23

## C.    Timeliness of Appeal

Landlord argues the attorney fees appeal must be dismissed because (1) the July 24, 2020 order awarding fees and costs is an appealable, postjudgment order, and (2) tenant failed to timely appeal from that order.  (See *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171–1172 [appeal dismissed for failure to timely appeal from attorney fees order].)  Landlord contends the amended judgment did not extend tenant's time to appeal from the earlier postjudgment order.  (See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 [" 'Where the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal it is therefore not affected' "].)

Tenant argues it was never served with a document entitled "Notice of Entry" of judgment or postjudgment order under California Rules of Court, rule 8.104(a)(1)(B).  Thus, its appeal is timely because it filed its notice of appeal within 180 days of the July 24, 2020 standalone order.  We agree.

As relevant here, rule 8.104(a)(1) of the California Rules of Court requires that "a notice of appeal must be filed on or before the earliest of:  [¶] . . . [¶]  (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or  [¶]  (C) 180 days after entry of judgment."

Here, landlord's notice of ruling is not entitled "Notice of Entry" of order and the print-out of the tentative ruling is not a filed-endorsed copy of the order required under rule 8.104.  Thus, landlord's notice of ruling did not trigger the customary 60-day period within which to file a notice of appeal.  (*Sunset Millennium Associates, LLC v. Le Songe LLC* (2006)

138 Cal.App.4th 256, 257.)  Instead, tenant had 180 days after entry of the appealable order to file an appeal.  Tenant's notice of appeal, filed 81 days after entry of the July 24, 2020 order, was timely.

###### D.      Attorney Fees Award

Tenant contends landlord is not entitled to attorney fees because (1) landlord is not a prevailing party under the contract since landlord recovered damages only in the unlawful detainer proceeding, a tort action; (2) the fee provision terminated with the lease on May 31, 2018, and is unenforceable; and (3) landlord's defense of the declaratory relief claim does not fall within the attorney fee provision.  We disagree.

###### i.      *Legal Principles*

In an action on a contract that provides for attorney fees and costs, the party prevailing on the contract is entitled to reasonable attorney fees as well as other costs.  (Civ. Code, § 1717, subd. (a); *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)  Civil Code section 1717 does not extend to tort claims.  " '[T]ort claims do not "enforce" a contract' and are not considered actions on a contract for purposes of section 1717."  (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178.)

We review the amount of an attorney fees award by the abuse of discretion standard, but the legal basis for an attorney fee award is reviewed de novo.  (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

###### ii.      *Landlord Is Entitled to Attorney Fees*

Applying these rules, the trial court correctly found landlord was the prevailing party and was entitled to attorney fees because both actions were based on a contract – the lease.  We dispense in short order the question of the prevailing party:

25

tenant acknowledges landlord recovered holdover damages in its unlawful detainer action and the trial court ruled in favor of tenant and against landlord in the declaratory relief action.

a.     action on a contract

Tenant disputes whether either action was "on a contract." "To determine whether an action is on the contract, we look to the complaint and focus on the basis of the cause of action. [Citations.]  Any action that is based on a contract is an action on that contract regardless of the relief sought."  (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 821–822; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.)

We conclude the unlawful detainer proceeding was an action on a contract because it alleged, and the court found, that tenant breached its contractual lease obligation to pay rent at the holdover rate.  Tenant's reliance on *Drybread v. Chipain Chiropractic Corp.* (2007) 151 Cal.App.4th 1063 (*Drybread*) is misplaced.  The *Drybread* court was persuaded the unlawful detainer action before it sounded in tort because the landlord did not allege a contractual breach.  It sought possession of the premises as well as fair rental value and statutory damages for the continued possession, which the landlord alleged was malicious.  (*Id.* at p. 1076.)  *Drybread* is distinguished on its facts.

As to the declaratory relief action, there is no dispute it is founded on a contract:  Tenant sought a judicial termination of its rights under a contract, namely whether it had validly renewed the lease.

b.     expiration of the lease

Tenant also attempts to avoid the attorney fees provision by repeating its earlier argument that the provision expired with the lease on May 31, 2018.  Tenant provides no authority for the

26

proposition that an attorney fees provision is unenforceable after expiration of the agreement. The assertion is nonsensical. Litigation over the applicability of an attorney fees provision frequently, perhaps customarily, concludes after the expiration of the underlying agreement. Numerous appellate decisions have applied Civil Code section 1717 to award attorney fees to prevailing parties even in situations where the contract containing the attorney fees provision has expired, is unenforceable, or has been rescinded. (*North Associates v. Bell* (1986) 184 Cal.App.3d 860, 865 [citing cases].)

Tenant also argues landlord is not entitled to attorney fees for defending against the declaratory relief claim because it had not "brought" the claim. We reject tenant's argument. Where an attorney fee clause provides for an award of fees incurred in enforcing a contract, "[i]t is settled that it is irrelevant if the fees were incurred offensively or defensively." (*Shadoan v. World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 107; Code Civ. Proc., § 1032, subd. (a)(4) [a "prevailing party" includes "a defendant in whose favor a dismissal is entered . . . ."].) We disagree that *Mountain Air, supra*, 3 Cal.5th at p. 744 states a general rule to the contrary. Here, tenant brought an action to enforce its rights under a contract, and landlord was the prevailing party in the action. Thus, under the lease, tenant was entitled to attorney fees.

### iii.    *The Trial Court Did Not Abuse Its Discretion in Awarding $651,421 in Attorney Fees*

We next consider whether the trial court abused its discretion in awarding attorney fees of $651,421.75. We conclude it did not. The trial court properly used the lodestar method (number of hours worked times reasonable hourly rate) to calculate the amount of attorney fees to award in a highly

27

contested lawsuit. (*Robertson v. Fleetwood Travel Trailers of California, Inc*. (2006) 144 Cal.App.4th 785, 818–819 (*Robertson*); *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135.)

Here, the trial court found the hourly rates of landlord's attorneys were reasonable and in line with prevailing market rates for counsel of similar skill and expertise. The trial court did reduce landlord's attorney fees by approximately $138,000 for duplicative work performed by in-house counsel and for work not encompassed by the fee provision.

Tenant does not challenge the trial court's use of the lodestar method to calculate attorney fees. Nor does he contend the hourly rates for the attorneys were unreasonable. Without any legal or factual support, tenant supplies its own "generous" estimates of the reasonable number of hours it would take to litigate this case. It suggests that landlord's lead trial counsel should be allocated 48 hours (six days at eight hours per day) total for his presence at trial. This proffer does not account for trial preparation or any other trial-related work. Tenant's estimate that attorney fees for the entire litigation, including summary judgment and discovery, should total $110,000 is nothing but speculation, and we need not credit it.

Tenant also argues landlord may not recover fees for work incurred in connection with the two unlawful detainer actions landlord voluntarily dismissed. The trial court found this time was for pre-litigation work necessary to investigate and evaluate landlord's claims, and was compensable. The trial court did not abuse its discretion. (*Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 656.)

Tenant next contends landlord may not recover any fees for work performed by in-house counsel. Our Supreme Court disagrees: "We discern no basis for discriminating between

counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer.  Both are bound by the same fiduciary and ethical duties to their clients.  [Citation.]  Both are qualified to provide, and do provide, equivalent legal services.  And both incur attorney fees and costs within the meaning of Civil Code section 1717 in enforcing the contract on behalf of their client." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094.)  The trial court properly exercised its discretion in awarding fees for time spent by in-house lawyers and reducing them by 40 percent.

### E. Cost Award

Relying on Code of Civil Procedure section 1033.5, tenant sought to strike $2,950 from landlord's expert witness fees.  The trial court found the expert fees were reasonably necessary to the litigation and were recoverable under Code of Civil Procedure section 1033.5, subdivision (c)(2).  The trial court erred.

Although subdivision (a)(8) of Code of Civil Procedure section 1033.5 allows for recovery of expert witness fees if they are ordered by the court, subdivision (b)(1) of the same section expressly disallows the recovery of fees for expert witness not ordered by the court "except when expressly authorized by law." Landlord devotes two sentences to this argument, fails to cite the relevant statute, and provides no authority for the award of expert fees in this setting.  We conclude that by statute, the expert fees were not recoverable, and we modify the judgment accordingly.  (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1066; *Carwash of America-PO v. Windswept Ventures No. 1* (2002) 97 Cal.App.4th 540, 542.)

### *DISPOSITION*

The posttrial award of costs is modified to tax $2,950 in fees for landlord's expert witness.  The amended judgment shall

include an award of costs (exclusive of attorney fees) in the amount of $26,059.88.  The judgment, as amended, is affirmed. Landlord to recover its costs on appeal.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


KIM, J.